Patterson *v.* Yeaton.

JOSEPH W. PATTERSON, *Adm'r, in Equity, versus* JOHN YEATON.

A having taken a deed of land from B, and given a mortgage back, enters into possession ; but, at a subsequent period, by a verbal agreement, A sells to B the right of redemption for a sum which B pays in hand ; and A re-delivers the deed to B, it not having been recorded, whereupon B enters upon the land, occupies and improves it, claiming to be the owner, and A, living for some years, repeatedly declares that he has sold the land to B : — *Held,* that this is insufficient to revest the title in B, the mortgage remaining uncancelled.

*It seems,* that the surrender or cancellation of an unregistered mortgage, or any instrument of defeasance only, revests the estate in the mortgager. And the surrender or cancellation of a deed not recorded, and a conveyance by the first grantor to a third person without notice, will give the latter a good title.

But the surrender of a deed to the grantor, leaving uncancelled a mortgage given to him to secure part of the purchase money, is not sufficient to re-vest the whole title in him.

As a court of equity, this Court has no power to compel a specific perform-ance of a verbal contract for the sale of land, even although partly executed.

Nor, in law, can such a contract be held a valid defence against a party having an equitable right to redeem a mortgaged estate.

But so far as the purchaser has paid money in pursuance of the verbal sale, or made improvements on the estate by reason thereof, he is entitled to compensation.

BILL IN EQUITY.

It appeared by the bill and answer, that the respondent, Dec. 14, 1850, conveyed to Jefferson Pierce, the plaintiff's intestate, certain land in Vassalborough, and at the same time the said Pierce gave to the respondent a mortgage of the same land to secure the payment of certain sums therein named.

The plaintiff claimed by his bill to redeem the premises by fulfilment of the conditions of the mortgage, and called for an account of rents and profits received.

The respondent alleged, in his answer, that, on October 8, 1851, Pierce, having failed to fulfil the stipulations contained in the mortgage, sold to the respondent the right of redemp-tion of the premises for the sum of $225, and gave him a re-lease in writing, of the following purport :—

Patterson *v.* Yeaton.

"Sold to John Yeaton all the right that I have this day in land belonging to me for 225 dollars, more or less. Received payment, "Jefferson Pierce.

"Oct. 8th, 1851."

The respondent, at the same time, paid the sum named in the release, and Pierce delivered to him the deed which the respondent had given to Pierce, Dec. 14, 1850, which deed remained unrecorded.

The answer further alleged, that this latter transaction was at Pierce's urgent request, and for the purpose of revesting the entire title to the premises in the respondent; that the respondent entered on the premises, and had ever since remained in possession; that he had expended a large sum of money in clearing the land, and erecting and repairing buildings thereon; and that the plaintiff had no right or lawful claim to redeem the premises.

The respondent afterwards put on file the written release above referred to, but subsequently obtained leave to withdraw it; when, on motion of the plaintiff, it was ordered to remain on file.

There was testimony from several witnesses, tending to show that Pierce, at different times and places, declared that he had sold all his interest in the premises to the respondent; and William S. Reed testified, amongst other things, that Yeaton, two or three weeks before Pierce went to California, (which was soon after the alleged release,) borrowed of Reed $200, and in his presence paid it to Pierce, and that Yeaton afterwards repaid the loan.

*R. H. Vose,* for the plaintiff, contended that the paper on file, purporting to be a release, was a palpable forgery. The admissions of Pierce that he had sold to Yeaton do not prove a legal sale. Parol evidence is not admissible as a substitute for a written conveyance. 2 Story's Eq. Jur., § 1531, p. 902. Any conveyance of interests in real estate must be made by deed duly executed. R. S., c. 72, § 1;

c. 111, § 1.    Only a tenancy at will can be created by parol.
R. S., c. 73, § 10.

A court of equity may compel the specific performance of
written, but not of parol contracts.   R. S., c. 77, § 8;  *Wilton
v. Harwood*, 23 Maine, 131.

*J. M. Meserve*, for the respondent.

The sale of Pierce's right of redemption to Yeaton, being
a parol contract, must, from its nature, be proved by parol
testimony.   It is always competent to prove a payment by
parol.   2 Greenl. Ev., 491.  ·The respondent is called upon
to account for rents and profits.   Evidence of· the parol
agreement is admissible to protect him, and, if admissible for
this purpose, is admissible for all purposes.   Greenl. Cruise,
title 32, Deed, c. 3, § 37;  2 Story's Eq. Jur., § § 760, 761.

The declarations of Pierce are evidence against him, and
bind his representatives equally with himself.   The whole is
confirmed by Pierce giving up the deed to Yeaton.

Were the facts proved sufficient to convey the right of
redemption ?   It was a contract between the parties them-
selves, free from suspicion of fraud, and fully executed on
both sides.   Yeaton entered into and remained in possession.
His right was never disputed during Pierce's life.    The
agreement, payment and· possession, are sufficient to pass the.
title in the equity of redemption.

The agreement is not within the statute of frauds.   It has
been performed on both sides, the purchase money paid, and
the purchaser in possession ever since.   In such a case, a
court of equity will uphold it.   1 Hilliard on Vendors, 144.
Parol agreements for the sale of lands are enforced when
there has been a performance in part.   Greenl. Cruise, Deed,
c. 3, § § 27—32;  2 Story's Eq. Jur., § 759;  4 Kent's Com.,
493;  1 Hil. on Vend., 145;  Brown on Frauds, c. 19.

In this State, the Court can enforce specific performance of
written contracts only.   But, in the case at bar, the Court is
not called on to enforce, but to repudiate a contract fairly
made by both parties, fully executed, and where the purchaser

has paid the full value, occupied and cleared the land, built new and repaired old buildings, and paid the mortgages which Pierce was to have paid. Where a contract is free from fraud, and fully executed, the Court will not disturb it, especially so as to work a fraud on the other party. Brown on Frauds, 118. The statute of frauds does not apply to a contract fully executed. *Stone* v. *Dennison*, 13 Pick., 1.

The facts proved, showing conclusively that it was the intention of both parties to revest the title in Yeaton, the redelivery of the deed to him by Pierce was sufficient to effect the purpose. *Barrett* v. *Thorndike*, 1 Maine, 73; *Nason* v. *Grant*, 21 Maine, 160; *Holbrook* v. *Tirrell*, 9 Pick., 105; *Commonwealth* v. *Dudley*, 10 Mass., 403; Shep. Touch., 70; Brown on Frauds, 60; *Trull* v. *Skinner*, 17 Pick., 213.

The equity of redemption having been purchased by the mortgagee, he has the entire title, and the plaintiff can take nothing by his bill; and this is the only disposition of it which will do justice between the parties.

The opinion of the Court was drawn up by

MAY, J. — The right of the orator to redeem the premises described in his bill is fully established, unless the facts relied upon in the respondent's answer, and sustained by his proofs, show a valid defence. Said premises consist of ninety-five acres of land, conveyed by the respondent, on December 14, 1850, to the orator's intestate, and by him mortgaged back to secure the performance of a certain agreement then existing between the said parties. That agreement it is not contended has ever been fully performed.

The defence now urged is, that afterwards, on the eighth day of October, 1851, the respondent, at the urgent request of said intestate, purchased the right in equity to redeem said premises of said Jefferson Pierce, then in full life, and paid him the sum of $225, therefor, in full for said right, who thereupon gave a release to the said respondent in the following words:—"Sold to John Yeaton all the right that I have this day in land belonging to me for $225, more or less," dated

October 8, 1851, and signed by the said Pierce; and at the same time gave up to the respondent the deed then unrecorded, which said respondent gave to him of the premises described in the mortgage, and bearing even date therewith; all which was done with the purpose and intent of vesting the entire estate in said premises in said respondent. All this is directly alleged and sworn to by the respondent in his answer.

The answer further alleges, that said Pierce represented and declared to said respondent that said transactions would operate as a release *of his right* of redemption, and vest the whole title in said premises in said respondent, and that said respondent then and there believed that such would be their effect; and that, according to the respondent's best knowledge and belief, the said Pierce so understood the same, and afterwards in his lifetime admitted, represented and declared, to divers persons, that he had *so* sold all his right in said property to the respondent.

There is much testimony in the case tending to show that said Pierce did represent to several persons that he had sold all his interest in said premises to the respondent; but no such release as is set forth in the answer is produced. The one which was produced, the suggestion being made that it was fraudulent and forged, was withdrawn by the counsel for the respondent, but subsequently put into the case by the counsel on the other side, as tending to impeach the respondent's answer in other respects. Upon examination of the paper, we are satisfied that it is not genuine, and no such release as is alleged and sworn to was ever given. Under such circumstances, no part of the respondent's answer can be regarded as true, any further than it is corroborated by other evidence. *Falsus in uno, falsus in omnibus,* though not a binding maxim at law, is deserving of great weight in determining how much credit shall be given to the statement of a party or a witness.

The alleged release seems to have been originally the gravamen or gist of the defence. All the other facts seem to

have been regarded in the answer as corroborative of that. The answer alleges no other sale of the equity of redemption than such as was evidenced by the written release. The cancelling of the respondent's deed to the orator's intestate, and the subsequent statements by him in regard to the sale of all his interest in the premises to the respondent, tend strongly to show that some release in writing ought to have been given. If the surrender of the deed was intended as a cancellation of the conveyance, and to divest the intestate of his estate, it is remarkable that the mortgage depending upon it should not have been also given up or discharged. If the intestate had, in fact, parted with his estate, the mortgage had no longer any basis on which to stand. It is, therefore, improbable that the deed was given up with any such design.

The other testimony in the case shows that the orator's intestate frequently said that he had sold out his place to the respondent and got his pay; and one witness testifies that he saw $200 paid; and it also appears that said Pierce had a note for $25, dated October 8, 1851, signed by the respondent, which was subsequently paid to the indorsee of Pierce.

In view of these facts, it is contended in defence, that, notwithstanding the failure to show a written release as alleged, still the surrender of the deed from Yeaton to Pierce by the latter, under the circumstances in this case, revested the entire estate in the respondent, notwithstanding the mortgage was not given up or discharged, so that the orator's intestate thereby ceased to have any equity of redemption. The only evidence that the deed was in fact surrendered depends upon the respondent's answer, and the fact that he now produces the deed in court; and the only evidence that it was surrendered with the purpose and intent of revesting the title to the premises in the respondent depends upon his answer alone, except so far as the same may be incidentally corroborated by the statements of the intestate, that he had sold out to the respondent his interest in the place.

Assuming that the deed was surrendered for the purpose, and with the intention alleged, which, perhaps, may well be

doubted, we are not satisfied that such a transaction, under our law, would have the effect to revest the estate in the respondent. It is believed that, in all those cases in the books where the surrender and cancellation of deeds conveying lands have been held, as between the parties, to revest the estate in the grantor, the deeds have not only been unrecorded, but were surrendered soon after their execution and delivery, and the parties were in fact restored to the same position, or to what was equivalent, that they stood in before the conveyance was made. In the present case, the deed surrendered was but one part of a transaction, and while the conveyance to the mortgager was to be cancelled, his mortgage and liabilities thereon were left in full force. In some of the cases, the possession had not changed prior to the cancelling of the deed.

In the case of *Nason* v. *Grant*, 21 Maine, 160, cited in defence, the deed of conveyance and mortgage back, together with the notes, were all given up and cancelled. Had the surrender been of the mortgage, or any instrument of defeasance only, the estate would thereby revest in the mortgager. Not, however, as is said by SHAW, C. J., in the case *Trull, in equity,* v. *Skinner & al.*, 17 Pick., 213, "by way of transfer, nor, strictly speaking, by way of a lease working upon the estate, but rather as an estoppel arising from the voluntary surrender of the legal evidence by which alone the claim could be supported; like the cancellation of an unregistered deed, and a conveyance by the first grantor to a third person without notice. The cancellation reconveys no interest to the grantor, and yet, taken together, such cancellation and conveyance make a good title to the latter by operation of law."

In the case of *Holbrook* v. *Tirrell*, 9 Pick., 105, PARKER, C. J., says, "that the mere cancellation of the deed, under which one holds title to real estate, does not divest the title or revest it in the grantor, seems to be abundantly settled by the cases cited in the argument;" and he particularly refers to the two cases from the Reports of Connecticut, vol. 4, p. 550, and vol. 5, p. 262. We find nothing connected with the

cancelling of the respondent's deed to Pierce, which, upon the principles above stated, can operate by way of re-conveyance or estoppel to prevent the orator in this case from setting up and maintaining his title to the equity of redemption.

Assuming, also, that the evidence in the case, independent of the alleged written release, satisfactorily establishes the fact of a parol sale of the intestate's right in equity of redemption, and the payment of the price agreed therefor, we know of no principle by which such a sale can be upheld, either in law or equity, under the circumstances of this case.

It is said the purchaser went into immediate possession; but this he was entitled to under his mortgage; and, so far as he may have paid any money in pursuance of the sale, or made any improvements upon the estate by reason of such parol contract or sale, he will be entitled to recover therefor, upon the principles settled in *Richards* v. *Allen*, 17 Maine, 296, provided such sale shall be repudiated and a redemption shall take place.

By the law of this State, no such verbal contract, even when accompanied by part performance, will enable this Court, when sitting as a court of equity, to compel a specific performance. *Inhabitants of Wilton.* v. *Harwood*, 23 Maine, 131. This is conceded by the counsel in defence. Such, also, is the law in Massachusetts. *Parker & wife* v. *Parker & wife*, 1 Gray, 409.

No reason is perceived, if such a contract will not authorize this Court, on its equity side, to decree a specific performance of it when it has been partly performed, why the same facts should enable it to set up such a contract as a valid defence against a party having an equitable right to redeem an estate which he has mortgaged. The statute, which was in force when the alleged contract was made, forbids the exercise of any such power. R. S., c. 91, § 30. By that statute, it was enacted that "no estate or interest in lands, unless created by some writing, and signed by the grantor or his attorney, shall have any greater force or effect than an estate or lease at will; and no estate or interest in lands shall be granted, assigned or surrendered, unless by some writing sign-

ed as aforesaid, or by operation of law. The same provision is substantially reënacted in the R. S. of 1857, c. 73, § 10, with the omission, however, of the words "by operation of law." We know of no "operation of law," while the statute of frauds is in force, by which such a contract, or surrender of a deed, as is relied on in defence, can divest the holder of real estate of his title thereto, or vest it in another. The orator, therefore, is entitled to a decree, permitting him to redeem the premises described in his bill, and for his costs; and the case must be sent to a master, to hear and determine the amount to be paid for that purpose.

TENNEY, C. J., and RICE, APPLETON, CUTTING, and GOODE-NOW, JJ., concurred.