LOUISE BUNZ, APPELLANT, V. JOHN C. CORNELIUS, APPELLEE.

1. **Trial**: ORIGINAL PETITION AS EVIDENCE. When a cause is being tried upon an issue formed by an amended petition, answer, and reply, the original petition, if inconsistent with the amended petition, is competent evidence for the purpose of proving admissions inconsistent with the claim and testimony of plaintiff upon the trial. And where such pleading is verified by the oath of the party filing it, and it is shown that the contents were known and understood at the time of such verification, and where the determination of the cause depends upon the unsupported testimony of the party thus contradicted, such evidence would be entitled to weight. But if the testimony offered by both parties tended to support the allegations of the amended petition, and it is not shown that the party verifying the original pleading knew its contents, not understanding the

language in which it was written, the rule would not apply with so much force.

2. **Specific Performance:** SALE OF PART OF HOMESTEAD. Where a defendant and his wife sold a part of their homestead and executed their joint conveyance therefor and delivered the deed to the purchaser, and where it was afterwards ascertained that the premises were encumbered by judgment liens which could be enforced against the deeded premises and the deed was surrendered to the seller and a lease taken for six years, with the understanding and agreement that at the end of that time the judgment liens would be canceled and the contract of sale then carried out, the purchaser will be entitled to receive the deed at the expiration of the six years, or when the judgment liens are removed, and such right will date, so far as the homestead rights of the grantors are concerned, from the delivery of the deed by them.

3. **Conveyance by Deed:** REDELIVERY OR SURRENDER DOES NOT DIVEST TITLE OF GRANTEE. Where a deed of conveyance of real estate is executed and delivered to a purchaser, such execution and delivery vests the title of the grantor in the grantee and a redelivery or surrender of the deed unaccompanied with the purpose of rescinding and annulling the contract of purchase will neither divest the grantee of the title nor operate as an estoppel against him.

4. **Specific Performance:** EVIDENCE: DECREE. In an action for the specific performance of a contract for the sale of real estate where the prayer is for general relief it was *Held,* That if the facts stated in the petition and proved on the trial showed that the contract had been performed and the conveyance made, and that the proper relief would be a decree quieting the title of the plaintiff, such decree should be entered as would protect the plaintiff in the enjoyment of the property in question. But that such decree should be subject to the payment of the unpaid part of the purchase money as is shown to be unpaid and of the taxes paid by the defendant as accrued liens after the execution and delivery of the deed.

APPEAL from the district court of Hall county. Heard below before NORVAL, J.

*Thummel & Platt,* for appellant.

*O. A. Abbott,* for appellee.

REESE, J.

This is an action for the specific performance of a contract for the sale of real estate. The decree being against the plaintiff, she appeals.

The substance of the allegations of her petition is, that in the year 1876 the defendant was the owner of the real estate in question, and that he sold the same to plaintiff for the sum of $125.00. Of this amount, $75.00 was paid in cash and the remaining $50.00 was to be paid in one year from the date of purchase. A warranty deed was executed by defendant and his wife and delivered to plaintiff, whereupon she took possession of the property, making lasting and valuable improvements thereon, and has resided thereon as her home ever since. That about the 7th day of July, 1877, defendant called upon plaintiff and told her that, owing to the judgments against him, he could not make a good title to the property, and, the deed not being yet placed on record, he would better take it and execute to her a lease for six years, at the end of which time he would have the judgment liens removed and would then make a good deed; or, if at that time the liens were not canceled, he would make another lease for ninety-nine years; that the property was hers, and she might make all the improvements desired, and he would give her a writing or lease which would be as good as a deed, until the matter was fully cleared up, when she could pay him the unpaid $50.00, and the title would be conveyed to her free from incumbrance; or, failing to be able to do so, he would execute the long term lease. Both parties were Germans, plaintiff being unable to read or speak the English language. That defendant delivered to her a writing, stating that it was a written contract containing the terms of the agreement, which she received supposing it to be such. Having full confidence in the word and integrity of defendant, she laid it away, ignorant of its real contents. That in fact the

writing did not contain the whole contract as represented to her when she signed it, but was simply a lease for six years, the rent reserved being the sum of $75.00 so paid in advance.    That defendant had removed the judgment liens and was now able to convey the property, but that he refused so to do, and demanded its possession.    She having tendered the $50.00 now due upon the contract, seeks a reformation of the contract and its specific performance.

The answer admits the ownership of the premises, the sale, payment of $75.00 as part of the purchase price, the execution of the deed, the possession by plaintiff of the property, the return of the deed, the existence of the judgment liens, the making of the improvements to the extent of three hundred and twenty-five dollars, the execution and delivery of the lease, and the tender of the sum of $50.00 and refusal to execute the deed or long-term lease.    He alleges that, after the sale and execution of the deed by himself and wife, the plaintiff returned the deed to him and refused to accept it, and at that time he was in straitened circumstances and could not refund the $75.00, and in order to satisfy her therefor he executed the lease for six years, which she received in full satisfaction for said payment, and that the contract of sale was then terminated, the lease being in accordance with their agreement, there being no contract, either verbal or otherwise, for the conveyance of the premises or the execution of the long-term lease.    He alleges the possession by plaintiff of the premises to be under and by virtue of the lease, and not by virtue of any other contract or agreement, and that all the improvements which were made were made under the lease, with full knowledge of its contents, and that it terminated on the 7th day of July, 1883.    That all the conversation concerning the contract and lease was in the German language, and was fully understood by plaintiff, and the contents of the lease were fully explained to her.    That he never has and does not claim the improvements made upon the property, and

is willing that plaintiff may remove them.   He alleges that
he has paid all taxes upon the property during the occu-
pancy.of plaintiff, including the construction of sidewalks,
none of which have ever been paid or offered to be paid by
plaintiff.   That at the expiration of the lease and plain-
tiff's refusal to surrender he commenced an action against
plaintiff for the forcible detention of the premises and ob-
tained a judgment of restitution, but that plaintiff had
appealed therefrom and the cause was pending in the said
district court on the appeal.   It is also alleged that the
supposed agreement was an agreement for the purchase of
real estate, and that no note or memorandum thereof was in
writing, and also that if any such agreement was made it
was not to be performed within one. year, and that it was
void by the statute of frauds.   That at the time of the
making of the said contract of sale and at all times since
said date he has been the head of a family consisting of a
wife and children, and that said premises constituted a
part of his homestead, and that his wife, who was living
on the 7th day of July, 1877, never consented to such sale
or lease, and that since the death of his first and marriage
to his present (second) wife she has never given her consent
to such sale or conveyance, and that for that reason the
plaintiff ought not to have her action against him.

The reply denies the allegations of the answer.

The question presented upon a review of the testimony
is not so much upon a conflict of the testimony, although
somewhat conflicting, but rather as to the proper conclu-
sions to be reached and inferences to be drawn from the
facts as clearly proved or conceded by the testimony of the
defendant and his witnesses.   Taking the case together as
a whole as presented by the proofs, we think it unquestion-
ably appears that defendant and his family were residing
together upon a tract of land, all of which was a home-
stead and exempt from levy by execution.   That judgments
existed against him which were a dormant lien upon the

whole property, but which was unknown at the time by both parties to this suit; that acting in the belief that defendant could convey a good title to the premises in question plaintiff purchased the same, being a small portion of the homestead, for the sum of $125, paying $75 in cash and agreeing to pay the remaining $50 at the expiration of one year, a warranty deed being executed by defendant and his then living wife and delivered to plaintiff; she taking possession of the property and making improvements thereon to the extent of $500 in value, consisting of a dwelling-house, etc. Plaintiff was a widow and without means, the $75 having been in part wages due her for labor, failed to get her deed recorded, and after the lapse of about six months it was discovered that a conveyance could not be made without rendering the property liable to levy upon execution by the creditors of defendant. The deed was then surrendered to defendant by plaintiff and the lease for six years executed. The plaintiff testifies in substance as alleged in her petition as to the circumstances under which the lease was received. Her testimony is supported by the testimony of George H. Thummel, Mrs. Carlotta Bartenbach, C. Schlotfeldt, and T. Sumers, who all testify in substance that at various times defendant stated to them that when he found the property was so encumbered that he could not make a clear title he took the deed back and gave her a lease for six years, by which time he expected to free the title from the liens and would then make a good deed, or if the liens still existed he would make a lease for ninety-nine years. The defendant, when testifying on his direct examination in his own behalf, in answer to the question as to what was said to the plaintiff at the time he gave her the lease, answered as follows: "I told her when I found out I could not sell there was a heavy lien on that property. I told Mrs. Bunz, 'The paper you have got is not worth anything and you pay $75 onto it and for them $75 I

give you a six years' lease, and when this six years is gone by I may have a different thing, and then I may be able to sell it to you or lease it to you for ninety-nine years.' That is the way I talked in German. She says, ' All right,' so we made the lease and she gave me back the deed." In his cross-examination the following occurs:

Q. You say you told her what was in the lease. Now, did you not tell her further than that that at the end of this time you would give her a deed or a lease for ninety-nine years?

A. Yes, sir; I told her in six years we might have different times, so I could be able to pay off those liens on the property and then I might sell to her or give her a lease for ninety-nine years.

Q. You have paid all these liens up now, have you not?

A. Yes, sir.

Q. And you have a clear title there, have you not?

A. Yes, sir.

Q. And you have refused to give her the deed or make her the lease, have you not?

A. Yes, sir.

*       *       *       *       *       *

Q. You and Mrs. Bunz have lived next door to each other for a long time?

A. Yes, sir.

Q. The family relations were all good, were they not?

A. Yes, sir, about half the time.

Q. Now you say you were at the time you told her you might be in better circumstances, and you would deed it to her?

A. Yes, sir.

It is true that the witness afterwards, in answer to certain questions propounded by the court, testified that he did not agree to make the deed, nor the lease at the end of the six years, and that he did not represent to plaintiff

that any such provisions were contained in the lease. But by the whole record it is clearly shown that the contract was made as claimed by plaintiff.

A former petition filed by her was introduced in evidence by defendant, in which it is alleged that the agreement or contract to convey or execute the long lease rested in parol and was made at the time of the delivery of the lease. It is claimed that this petition is an admission or declaration under oath inconsistent with the allegations of the amended petition and her present claim. While this is to some extent true, and if the case depended upon her unsupported testimony, and it were shown that she knew the contents of the original petition, it might be entitled to much weight. Yet in view of the testimony of the other witnesses and the conceded circumstances of the case we cannot see that it should be entitled to any great consideration in arriving at the proper conclusion as to the merits of the case.

We agree with counsel for defendant that ordinarily where a party enters into possession under a lease and holds possession under it and in accordance with its terms, with full knowledge of its contents, no action would lie to enforce a specific performance of a different parol contract. This, of course, subject to the exception that if possession were surrendered and taken under the parol contract the rule would be otherwise.

It is insisted that, assuming the contract to have been made as claimed by plaintiff, yet the property being of the homestead of defendant and he having a wife then living, his contract, whether written or oral, would have been void and could not now be enforced. This contract was made in the year 1876 and the lease in 1877, prior to the enactment of the present homestead law, which prohibits the transfer, etc., of the homestead by either the husband or wife without being joined by the other. But were this not the case we cannot see that the question of

homestead can enter into the case.   The husband (defendant)
and wife joined in the execution of the deed in 1876.    By
this the title to the property was conveyed to plaintiff.
It has never been conveyed back to them.    The surrender
of deeds of conveyance cannot serve the purpose of divest-
ing a grantee of the title conveyed by the deed.    3d
Washburn Real Property, 285.  Tiedeman on Real Prop-
erty, § 812.   *Souverbye v. Arden,* 1 Johnson Ch., 255.
*Connelly v. Doe,* 8 Blackford, 320.

At most it could work an estoppel, and then only when
the surrender was for the purpose of annulling the con-
tract.

Therefore, if plaintiff is entitled to recover it must be
by the force of the conveyance to her, the vesting of the
title in her by such conveyance, and the fact that she has
not been divested of that title, and that her conduct in
accepting the lease will not create an estoppel against her,
and thus prevent her enforcement of her contract of pur-
chase.

It is very clear to the mind of the writer that the sur-
render of the deed by plaintiff was not for the purpose of
terminating her contract of purchase, but rather that the
contract might be perfected by the execution of such con-
tracts or writings as defendant might see proper to execute
for that purpose.   She had confidence in him.   He was
one of her countrymen.   She evidently looked to him
with faith that he would perfect her title.   Hence her
ready response of " All right," when he, according to his
own testimony, told her her paper (the deed) was not
worth anything, and at the end of the six years he might
" have a different thing," etc.   Neither could the rights of
the parties be changed in the least by the death of defend-
ant's wife after the execution of the deed and possession
thereunder and his remarriage.   The rights of plaintiff
were vested under the contract and conveyance of defend-
ant and his former wife.   Those rights have never been
divested.

It is shown that certain taxes have been paid by defendant since the contract was entered into. These taxes should have been paid by plaintiff. Whether they were paid before or after they became delinquent, with or without the knowledge of plaintiff, and the amount thereof, is not shown. He had the right to pay them, if necessary, to protect his security for the unpaid part of the purchase price which was tendered, but whether before or after the payment of the taxes is not clear. Neither can we ascertain from the record whether the taxes were paid before or after the commencement of the suit. But as they were a lien on the property equity would require that they be refunded with legal interest.

The prayer of the petition, as well as for a specific performance, is for general relief, under which such relief may be given as equity may require. *Johnson v. Phifer*, 6 Neb., 406. Plaintiff is clearly entitled to have her title quieted and the contract of sale carried out by defendant. The decree of the district court will therefore be reversed and a decree entered in this court quieting plaintiff's title to the property and requiring defendant to redeliver to plaintiff the deed executed in 1876, if such delivery can be made, and if not that this decree stand in lieu thereof upon condition that the unpaid part of the purchase price, together with all taxes, be paid into court for defendant within ninety days after the amount of such taxes, including that paid for the construction of a sidewalk, shall be ascertained, such taxes to draw interest at the rate of seven per cent per annum after their payment. If the parties can agree upon the amount of taxes paid and stipulate as to the facts, such agreement will be taken as the basis of the finding of the amount due defendant. Otherwise a reference will be ordered for the purpose of ascertaining the facts.

JUDGMENT AND DECREE ACCORDINGLY.

THE other judges concur.