CASE 18—ACTION TO RECOVER LAND—FEB. 27.

# Rittenhouse v. Clark and Others.

### APPEAL FROM FLOYD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS.    AFFIRMED.

DEFECT OF PARTIES—WAIVER OF OBJECTION—DEEDS—DESTRUCTION BY GRANTEE AND CONVEYANCE BY GRANTOR TO ANOTHER.

Held:    1. A defect of parties is waived unless the objection is made by a special demurrer or other pleading.

2. A married woman can not divest herself and her children of title to land by merely destroying the deed to them, and consenting to the making of a deed by the grantor to another; nor is she estopped thereby to claim her interest in the land, the grantee in the new deed being a party to the arrangements, and having knowledge of all the facts as to the title.

WALTER HARKINS, ATTORNEY FOR APPELLANT.

Appellee, Morgan Clark, owned a farm in Floyd county, which he desired to sell and found a purchaser in the person of John W. Porter, if he, Porter, could sell his coal and timber land. Clark sent his friend Wells to see appellant Rittenhouse and ascertain if he would buy the Porter land, which he agreed to do at the price of $2,225, for which Rittenhouse gave Porter his note for $2,050, and a check for $175. Porter bought the Clark farm and assigned him the said note and check in payment thereof. Clark and wife knew of this sale, by Porter to Rittenhouse, and made no objection thereto. Rittenhouse paid off said note by conveying to Clark and wife, for life, at their request, with remainder to the heirs of Morgan Clark, born or thereafter to be born of his wife, Rebecca, certain houses and lots in Johnson county at the price of $2,000, and paid $50 in personal property. Clark and wife moved on the land and continued to occupy it and rent the houses, for about eighteen months, when he became dissatisfied and brought this suit in Floyd county, to set aside the conveyance made by Porter to Rittenhouse, without making Porter a party, or the heirs of himself and wife, who were the owners of the reversionary interest in the land, or without making Alex. Webb or John G. Schuler, parties, who were purchasers of the property from said Rittenhouse.

We claim that the Chancellor could not decree a rescission of the contract, and it was error to do so, without having all the parties in interest before the court, and we claim that Clark and wife, were estopped from asking such relief after standing by and seeing the conveyance of the land made to Rittenhouse.

### AUTHORITIES CITED.

Story's Eq. Jurisprudence, sec. 385; Pickard v. Sears, English Ruling Cases, vol. 11, p. 78; Morgan v. R. R. Co., 96 U. S., p. 716; Maple v. Kussart, 91 Am. Dec., 214; Guffey v. O'Riley, 57 Am. Rep., 424; Stoors v. Barker, 6 Johns., N. Y. Chancery, 166 L. Ed., 88; Gevault, &c. v. Anderson, 2 Bibb, 545; Barclya v. Hendricks' heirs, 3 Dana, 380; Breeding, &c. v. Stamper, &c., 18 B. Mon., 178; Stone and Wife v. Werts, 3 Bush., 490; Morris v. Shannon, 12 Bush., 96; Ratcliff v. Iron Works, 87 Ky., 559; Wilson v. Scott, 13 Ky. Law Rep., 926.

JAMES GOBLE, ATTORNEY FOR APPELLEES.

The material facts in this case are as follows. Morgan Clark, an old man in his eighty years, nearly blind, diseased, weak in body and mind, easily imposed on, was induced to engage in a transaction with appellant, by which, it is claimed, he divested his wife of title to a tract of land worth about $3,000, coming to her as follows: "Mr. Clark, just before the second marriage, divided his land among the children of the first one, reserving for himself and family, a small portion as a homestead, which he afterwards conveyed to his second wife for life, with remainder in fee to her two children, reserving the right to use said land as long as he lived, and if there were no children of the second wife, living at her death, the land was to go to the children of the first marriage. Clark and wife exchanged this land with Porter for the land in controversy, Porter conveying to Mrs. Clark for life with remainder in fee to her children. After this exchange and conveyance, Porter pretended to sell the same land, a few days thereafter to Rittenhouse, who gave his note to Porter for $2,050, which purports to be for the purchase price of this same land which is known as the Long Branch land. On the same day Porter assigned the note to appellee, Morgan Clark, and a week thereafter Clark signed, by Mark, a receipt in which he acknowledged a payment of the said note, receiving at the same time a deed for some small lots and a small tract of land in Johnson county at the agreed price of $2,050, when it was not worth more than $700. Neither Mrs. Clark nor her children were parties to this transaction. After the deed to the Long Branch land had been made, delivered to, and accepted by Mrs.

Rittenhouse v. Clark, and others.

Clark, Porter and Rittenhouse, procured the possession of it, carried it away and caused it to be destroyed. This was done, as Porter and Rittenhouse then thought, to enable the former to · make to the latter, a deed that would convey to and invest him with the title. Possession was taken of the land by Rittenhouse at the time this deed was made, December 27, 1894. On the 8th of May, 1896, Clark and wife brought this suit to cancel the deed and regain possession of the land, offering to give back to the grantors all the property conveyed to them in Johnson county.

The lower court granted the relief prayed for and an affirmance is asked. Owings v. Hill, 9 Ky. Law Rep., 468, Devlin on Deeds, vol. 1, sec. 300; Tiedeman Real Property, sec. 812; Phillips v. Green, 3 Mar., 10; Whitaker v. Blair, 3 J. J. Mar., 241; Pruett v. Graves, 5 J. J. Mar., 119; Moore v. Tisdale, 5 B. Mon., 355; Barnett v. Shackleford, 6 J. J. Mar., 533; Kennedy v. Ten Broeck, 11 Bush., 251; Pomeroy's Eq. Jurisprudence, vol. 2, sec. 947; Davis v. Chancy, 5 Ky. Law Rep., 688; Boarman v. Gardner, 7 Ky. Law Rep., 521; Hunter v. Owens, 10 R., 651; McHarry v. Irwin, 85 Ky., 322.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—AFFIRMING.

It appears from the record that previous to December 20, 1894, the appellee, Morgan Clark, and his wife, Rebecca A. Clark, either owned, or had an interest in, a certain tract of land, which they exchanged with John W. Porter for a tract of land known in this record as the "Long Branch Land." Porter made a deed to them, by the terms of which Rebecca A. Clark was vested with a life estate in it, with a certain character of remainder to her children, with the right in Morgan Clark to control it during his life time. This deed was not recorded. On December 20, 1894, the appellant, Rittenhouse, and John W. Porter and others met the Clarks, and they sold the land to Rittenhouse for twenty-two hundred and some odd dollars. For reasons which will hereafter appear, Clark and wife did not make a deed to Rittenhouse, but the deed which Porter had made them was destroyed with the knowledge of Rittenhouse, Porter and the Clarks, and at the instance·

of Rittenhouse and Porter; whereupon Porter then made Rittenhouse a deed for the land. Rittenhouse gave Porter a check for $175, and his notes for $2,050, payable to the order of Porter, who thereupon indorsed and delivered the check and notes to Morgan Clark. On December 27, 1894, in payment of the notes which Rittenhouse had executed, and which had been assigned and delivered to Clark, he conveyed to Clark and wife, and to those who took the remainder interest in the Long Branch land, certain houses and lots, and some land at Mt. Carbon, in Johnson county. After occupying the property for a time, Clark and wife became dissatisfied, and instituted this action to recover the Long Branch land, it being claimed that old man Clark and wife were ignorant, neither being able to read nor write; that old man Clark was eighty odd years old, and did not have mental capacity to enter into the transaction; that they were overreached therein. It is further claimed that Mrs. Clark and her infant children owned the land, and she could not devest herself and children of title to the property by consenting that her deed should be destroyed. On behalf of Rittenhouse, it is claimed that the trade was in good faith; that old man Clark was capable of transacting business, and that he did not overreach them in the transaction; and, further, that as the Clarks were present, and consented that Porter should make the deed, they are now estopped to question his right to do so. On the trial of the case, the court set aside the contract, adjudged the Long Branch Land to the appellees, and restored the property which the Clarks had obtained from Rittenhouse to him.

We will first dispose of a preliminary question that arises in the case, which is, did the court err in rendering the judgment which it did, because the infant children of

Mrs. Clark and Porter were not parties to the proceeding?
It would be unprofitable to discuss the question as to
whether the infant children and Porter should have been
made parties to the action. This court has repeatedly de-
cided that where a party fails to demur specially to a
proceeding because certain persons are not made parties
to the action, or fails to raise the question by pleading,,
it is too late to raise the question here.

The doctrine of estoppel, which the appellant invokes
to aid him in defeating a recovery in this action, seems.
to us to have no place in it. It is true that the rule is
well recognized in Story's Equity Jurisprudence, in many
cases by this court and by the Supreme Court of the
United States, and we believe by all courts, that when a
person having title to an estate which is offered for sale,
and, knowing his title, stands by and encourages the sale,
and does not forbid it, and thereby another person is in-
duced to purchase the same under the supposition that the
title is good, the party thus standing by and being silent
is bound by the sale. When one is silent when he ought
to have in good faith spoken, he shall not be heard to speak
when he ought to be silent. If Porter had claimed to be
the owner of the property in question, and was proposing
to sell it to Rittenhouse, and Clark and wife encouraged
him to buy and pay for it, then they might have been estop-
ped thereafter to assert claim to it. Rittenhouse was not
negotiating with Porter for the purchase of the property,
but was buying it from the Clarks, and Porter
was simply aiding the contracting parties, to the
end that the Clarks be devested and Rittenhouse
invested with the title to it. The evidence shows
that Rittenhouse knew all about the deed which
Porter had made to the Clarks and its terms, and

was instrumental in having it destroyed; hence he traded with his eyes open as to the real condition of the title to the property.

A married woman may do an act which estops her from thereafter claiming her own property, but this is not one of the cases wherein she has deprived herself of that right. Mrs. Clark did not represent at the time of the sale to Rittenhouse that she had no title or interest in the property, nor did she represent that her children had none. On the other hand, the facts proven show that all the parties to the transaction recognized that she did have a life estate in it, and remainder in her infant children. The question here is, did she devest herself of title to the property by consenting that the deed which Porter had made her should be destroyed? She once having acquired title to the property, the destruction of the deed could not deprive her of it. When the owner of real estate executes and delivers a deed of conveyance to another, which is accepted, the title vests in the grantee. At least, in the case of a married woman, it will take a reconveyance to reinvest the grantor with title—a destruction of the deed will not do so. 1 Devl. Deeds, section 300, reads as follows: "When a deed has been properly executed and delivered, it operates as a transfer of title. Its redelivery to the grantor or its cancellation can not operate as a retransfer of the title so conveyed. Where it has once become effective, it can not be defeated by any act occurring afterwards, unless it be by force of some condition contained in the deed itself. The redelivery of a deed is not only ineffectual to retransfer the title, but also to revive a debt for the extinguishment of which the deed was given. "The decided weight of authority is that the surrender of a deed, though not registered, will not oper-

ate to revest the grantor with the title.' The fact that both grantor and grantee suppose that a deed will not take effect until recorded, and might be revoked at any time before that is accomplished, does not alter its legal character as a conveyance where it has been delivered to the grantee. Nor will a contemporaneous parol agreement between parties who have reciprocally executed and delivered deeds, that they shall not be probated for registry until one of the parties shall perfect the title to the land conveyed by him, prevent the vesting of the titles in accordance with the terms of the deeds. In such a case it is immaterial that the parties did or did not understand whether this would be the legal result of their acts. The title remains in the grantee when it has once become vested in him, notwithstanding the destruction of the deed or its return to the grantor, and although the latter has, through the direction of the grantee, again executed a deed to another." To the same effect is Tied. Real Prop., section 812.

We apply the rule announced by the authorities cited to the facts of this case, in so far as to hold that a married woman could not devest herself and her children of the title to real estate by simply destroying their deed, and consenting that their grantee shall make a deed to another. There is no proof in this record tending to show that the Clarks attempted to resell the property to Porter, or that they had any contract with him, by which he was to buy it. As we have said the facts of this case do not show that Mrs. Clark was estopped to assert her right to the Long Branch land by being present and consenting that Porter might make Rittenhouse a deed therefor. Not being guilty of any act working estoppel on her rights, the only way that Rittenhouse could claim the land

154 KENTUCKY REPORTS. [Vol. 110

as against her would be by showing that she had executed and delivered to him a deed of conveyance in the manner provided by the statute. There is no claim that she and her husband executed and delivered a deed to Rittenhouse for the property; hence she continued to hold the property according to the terms of the deed which Porter had made her and she was entitled to maintain this action. We might add here that we think, on the facts as proven in this case, if she had conveyed the property to Rittenhouse in the manner pointed out by the statute, the court would have been justified in setting the sale aside. As it is not necessary to do so, we forbear to give the reasons for the latter conclusion. The appellant certainly can not complain that the court restored to him the property which he had conveyed the Clarks. The judgment is affirmed.