(May 20, 1915.)

## ORLO URICH, Respondent, v. GEORGE F. McPHERSON et ux., Appellants.

[149 Pac. 295.]

SALE OF TOWN LOTS—DEED IN ESCROW—LIENS—COVENANTS OF WAR-RANTY—ESTOPPEL.

1. Where M. executes a deed conveying certain town lots to B. and said deed is placed in escrow to be delivered to B. upon the payment of the purchase price as agreed, and thereafter B. has certain improvements placed on said lots, and then sells said lots to U., and U. has full knowledge of said transactions and is advised by M. and others that said improvements have not been paid for and that liens may be filed against said lots, and U. takes the advice of his attorney that the time for filing liens had passed, and purchases said lots from B. and pays to M. the balance due from B. on the purchase price of said lots, and pays to B. the balance of the purchase price which he had agreed to pay to B. for said lots, and in order to save the expense of recording two deeds, it is arranged that the escrow deed should be destroyed and that M. should convey said lots direct to U., which he did, *held,* under the facts that although M. conveyed to U. by grant, bargain and sale deed, he did not warrant the title to said lots against liens thereafter filed for the construction of said improvements.

2. *Held,* under the facts of this case that U. is estopped from claiming that M. warranted the title to said lots as against said liens.

APPEAL from the District Court of the Second Judicial District for the County of Idaho. Hon. Edgar C. Steele, Judge.

Action to recover on an alleged warranty the amount paid to relieve the property involved from mechanics' or laborers' liens. Judgment for plaintiff. *Reversed.*

H. Taylor and W. N. Scales, for Appellants.

If the theory of the plaintiff is correct that under the facts the warranty in his deed bound him, there were no liens or

claims on the lots for which he or McPherson were responsible or for which there could be a foreclosure of the lien. (*Steel v. Argentine Min. Co.*, 4 Ida. 505, 95 Am. St. 144, 42 Pac. 585.)

The implied covenants in a deed by the use of the word "grant" do not include encumbrances done, made or suffered by the grantor unless he was under personal obligation to pay it. (*Polak v. Mattson*, 22 Ida. 727, 128 Pac. 89.)

It is well settled that parol evidence is admissible to show the state of facts existing at the time of the conveyance and that the land was taken subject to the encumbrances of which the purchaser had knowledge, and to show that while a warranty deed was given the maker of the deed should not be held to said warranty when it was understood and agreed between the parties that he was not to be so held. (*Allen v. Lee*, 1 Ind. 58, 48 Am. Dec. 352; *Hays v. Peck*, 107 Ind. 389, 8 N. E. 274; *Fitzer v. Fitzer*, 29 Ind. 468; *Laudman v. Ingram*, 49 Mo. 212; *Carver v. Louthain*, 38 Ind. 530; *Watts v. Welman*, 2 N. H. 458; *Pitman v. Conner*, 27 Ind. 337; *Maris v. Iles*, 3 Ind. App. 579, 30 N. E. 152; *Young v. Stampfler*, 27 Wash. 350, 67 Pac. 721.)

W. H. Casady, for Respondent.

The effect of the use of the word "grant" in a conveyance of real property is defined in sec. 3120, Rev. Codes, and the word "encumbrance" is defined in sec. 3121, and establishes beyond question that the deed in question was a warranty deed and warranted against the encumbrance of the liens which the plaintiff had to pay to protect his title to the lots.

SULLIVAN, C. J.—This is an appeal from a judgment rendered in favor of the plaintiff for damages on account of an alleged warranty in a deed executed by the defendants to the plaintiff for certain lots in the village of Cottonwood, Idaho county.

The following facts appear from the record:

About the 1st of August, 1908, the defendant, McPherson, entered into a contract with one Beatty whereby he sold to

Beatty four town lots for the agreed price of $250, to be paid in monthly payments of ten dollars each. A deed was placed in escrow in the German State Bank to be delivered to said Beatty when the full purchase price was paid. Under that agreement Beatty paid fifty dollars. He then sold said lots to the plaintiff for $400. After Beatty had purchased said lots and before he had sold them to Urich, he caused to be erected on said lots certain buildings and improvements. The plaintiff was informed of the deal between McPherson and Beatty and knew of the improvements which Beatty had placed on said lots prior to his purchase from Beatty, as he lived just across the street from said lots.

Before completing the deal with Beatty, plaintiff had a talk with McPherson and informed him that he could purchase said lots cheap from Beatty and intended to make the deal. Thereupon McPherson advised plaintiff of the possibility of liens on said lots for the improvements which Beatty had placed thereon. The plaintiff went to Judge Duffey, a practicing attorney, to get his advice in regard to liens, and was informed by said attorney that the time for filing liens for the improvements placed on said land had already passed. The plaintiff also had a conversation with the president of the German State Bank (in which bank said deed was placed in escrow), who also advised him to look out for liens on said property. Hendrickson, the contractor who had placed some of said improvements on said lots, also informed the plaintiff of his claim and the claim of another contractor or laborer against said lots on account of said improvements. The plaintiff thereupon advised Hendrickson to come downtown at the time he was to pay the money to Beatty and he would see that he got his money. Hendrickson appeared at the time and place suggested by the plaintiff, but the plaintiff failed to appear. Plaintiff closed said deal with Beatty and paid him for said lots, or paid the balance of the purchase price to McPherson, amounting to about $209, and the balance of the purchase price to Beatty. Thereupon, at the request of Beatty and with the acquiescence of the plaintiff, it was understood between the plaintiff, McPherson and Beatty that

as a matter of convenience and to save the recording of the deed from McPherson to Beatty, which had been placed in escrow, the escrow deed should be withdrawn and destroyed and a new deed be made from McPherson to the plaintiff to take the place of said deed in escrow; and it was fully understood and agreed that by said deed from McPherson to the plaintiff Beatty was conveying said lots and improvements to Urich. The purchase by plaintiff was from Beatty and not from McPherson. It clearly appears that McPherson did not intend to warrant or guarantee against any liens or encumbrances on said lots caused by said Beatty. The clear intention was that McPherson was to receive the unpaid balance that Beatty owed him on the lots and the remainder of the purchase price should go to Beatty, and that McPherson should not warrant the title to said lots from the acts of Beatty. The parties to the transaction fully understood the matter as stated.

After the plaintiff had fully investigated the probability of any liens being filed against said property because of the improvements placed thereon by Beatty, and being advised by his own attorney that the time for filing said liens had passed, Urich, the plaintiff, made the deal with Beatty for the purchase of said lots. After the purchase price from Beatty was paid to McPherson, Beatty was entitled to the delivery of said escrow deed and thereunder became the holder of the legal title. By mutual consent said deed was delivered or taken up and the deed referred to was made by McPherson, conveying the land to the plaintiff.

Thereafter liens were filed for labor, supplies and material contracted for by Beatty in the placing of said improvements on said lots, and McPherson was in no manner connected with said transaction. The plaintiff was thereafter compelled to pay the amount of said liens and brought this suit to recover the amount so paid.

But it is contended by respondent that said deed from McPherson to the plaintiff is a warranty deed, warranting the title against said liens and claims and that the terms of said warranty cannot be changed by parol evidence.

Under the facts of this case, we cannot agree with that contention. From the whole record it is clear that McPherson did not intend to warrant the title against said liens. The plaintiff was fully advised of the conditions and facts in regard to said liens, and he took his attorney's advice to the effect that the time for filing said liens had passed and for that reason they could not be made valid liens against said property. The Banker Nuxoll also advised him to be careful about those claims. The contractor himself advised him that he claimed a lien and the plaintiff arranged with him to be present when he paid the purchase price to Beatty, and that he, the contractor, would at that time receive the money due him for the improvements he had placed on said lots. The plaintiff disregarded said arrangement and paid Beatty with the full knowledge of all the facts in regard to the claims against said lots. McPherson was under no obligation to pay said liens; and he did not intend to, nor did he, under the facts, warrant the title against said lien claims.

This court held in *Polak v. Mattson,* 22 Ida. 727, 128 Pac. 89, that implied covenants in a deed by the use of the word "grant" do not include encumbrances done, made or suffered by the grantor unless he was under personal obligation to pay them. McPherson was under no obligation to pay for said improvements. He had already executed a deed to said lots and placed it in escrow to be delivered upon the payment of the purchase price. The doctrine is well established that parol evidence is admissible to show the true facts existing at the time of a conveyance and that the land taken was conveyed subject to encumbrances of which the purchaser had full knowledge, and to show that while the warranty deed was given, the maker of the deed should not be held on a warranty when it was understood and agreed between the parties that he was not to be so held.

In *Allen v. Lee,* 1 Ind. 58, 48 Am. Dec. 352, the trial court held that parol evidence to show that the purchaser purchased the land subject to the lease of one Prichard was in contradiction to the terms of the warranty in the deed, and therefore

inadmissible. The supreme court, in regard to that matter, said:

"We think this view of the case was erroneous. . . . . We are of the opinion that if the covenant had been properly worded, the evidence rejected should have been admitted, not to contradict the deed or to give a construction to the contract contrary to the written terms of it, but as a part of the *res gestae* to prove the state of facts existing at the time of the conveyance, and that the encumbrance in question was not within the purview of the contract."

In *Maris v. Iles, Administrator,* 3 Ind. App. 579, 30 N. E. 152, the court held that under a deed of general warranty it may be established by parol that the grantee undertook to pay any particular lien or discharge any encumbrance as part of the consideration, where the deed is silent upon the subject.

Now, it is evident under the facts of this case that McPherson never intended to warrant against the liens referred to, and it is equally clear that the plaintiff knew that he did not intend to do so; that in regard to that he relied upon the advice of his attorney to the effect that the time for filing said liens was passed. As bearing on this question, see, also, *Hays v. Peck,* 107 Ind. 389, 8 N. E. 274; 11 Cyc. 1123.

Plaintiff did not in terms agree to discharge said liens, but proceeded upon the theory that there were no liens, and he well understood that McPherson did not intend to warrant against such liens. The plaintiff stands in the same position that he would if he had agreed to pay said liens himself. (See, also, *Watts v. Welman,* 2 N. H. 458.)

The rule laid down in the case of *Young v. Stampfler,* 27 Wash. 350, 67 Pac. 721, is clearly the rule applicable to the case at bar under the facts presented. In that case a grantee in a warranty deed sued for a breach of the covenants against encumbrances, and it was there held that parol evidence was admissible to show that the grantor having purchased on execution sale and the land having been redeemed by the execution debtor, the warranty deed was given to plaintiff at the

request of the debtor on an understanding that the same was merely a redemption deed and that it should have no effect as a warranty.   The court said:

"Under our system equitable relief is given in actions at law.   The evidence to support the affirmative defense of the defendants was not introduced to control or vary the covenant in the deed, but to prevent the enforcement of the same, because it was obtained in such a manner that it would be a fraud upon the covenantors to allow the enforcement of the covenants.   In such a case oral evidence is admissible. . . . . Equitable estoppels are based on the ground of promoting the equity and justice of the individual case by preventing the party from asserting his rights under a general technical rule of law when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth."

Now, in the case at bar, Beatty purchased from McPherson, and if Beatty had paid the balance due on the purchase price and recorded the escrow deed, McPherson would not have been liable for said liens, and in executing said deed to the plaintiff at the request of Beatty and consent of plaintiff, he had no intention of warranting the title against any acts done by Beatty subsequent to the time said deed was placed in escrow, and it would be most inequitable and unjust, under the facts in this case, to require McPherson to pay the amount of said liens out of the purchase price of $250 agreed to be paid by Beatty to him for said lots.   It was not McPherson's intention to guarantee the title against said liens, and the plaintiff well knew that McPherson did not intend to warrant the title against such liens, but concluded, on the advice of his attorney, that such liens did not exist or that the time for filing them had passed.   And it would be most unjust and inequitable, under the facts of this case, to require McPherson to pay the amount of said liens when he never intended to warrant against them, and the purchaser well knew that he did not intend to do so.

The judgment must therefore be reversed and the cause remanded, with instructions to enter judgment in favor of

the defendants in accordance with the views expressed in this opinion. Costs awarded to the appellants.

BUDGE, J., Concurring Specially.—I concur in the conclusions reached by Chief Justice Sullivan in the above-entitled cause, but in doing so and to make my position clear desire to set forth the following additional reasons why, in my opinion, this judgment should be reversed and the cause remanded with instructions to enter up judgment in favor of the appellant.

When McPherson entered into the contract referred to in the statement of facts in this case, whereby he sold to Beatty the four lots for the agreed price of $250, to be paid in monthly instalments of $10 each, and placed the deed in escrow in the German State Bank to be delivered to Beatty when the full purchase price was paid, and when, in pursuance of said agreement, Beatty paid $50 on the purchase price and went into possession of said lots, the equitable title to the lots in question vested in Beatty; and when McPherson was paid the balance of the purchase price due upon the lots, the legal title to said lots, by operation of law, immediately vested in Beatty, where, under the facts in this case, it still rests.

The principle of law adhered to in the case of *Cannon v. Handley,* 72 Cal. 133, 13 Pac. 315, is applicable to the case at bar, viz., upon performance by grantee of the conditions upon which a deed is delivered in escrow, the depositary becomes the custodian of the grantee and his possession is the possession of the latter. The deed takes effect the moment the conditions are performed without any formal delivery into the hands of the grantee. And in the case of *Shirley v. Ayres,* 14 Ohio, 307, 45 Am. Dec. 546, the court said: "It is not essential to the validity of a deed that it be actually delivered to, or ever pass into the hands of, the grantee."

Urich, being a party to this transaction and acting in conjunction with Beatty and McPherson, with full knowledge of the transfer of title to the lots from McPherson to Beatty, and of the attempted transfer of the title to said lots

from McPherson to himself by the destruction of the deed from McPherson to Beatty, cannot now be heard to complain of certain liens which attached to these lots by reason of the improvements made upon the same by Beatty subsequent to the execution of the deed from McPherson to Beatty, which liens thereafter ripened into a valid and subsisting claim against the lots, for the satisfaction of which the lots in question ultimately became liable.

1 Devl. on Deeds, sec. 300, contains the following rule:

"When a deed has been properly executed and delivered, it operates as a transfer of title. Its redelivery to the grantor or its cancelation cannot operate as a retransfer of the title so conveyed. Where it has once become effective, it cannot be defeated by any act occurring afterward, unless it be by force of some condition contained in the deed itself. . . . . 'The decided weight of authority is that the surrender of a deed, though not registered, will not operate to revest the grantor with the title.' The fact that both grantor and grantee suppose that a deed will not take effect until recorded, and might be revoked at any time before that is accomplished, does not alter its legal character as a conveyance where it has been delivered to the grantee. . . . . The title remains in the grantee when it has once become vested in him, notwithstanding the destruction of the deed or its return to the grantor, and although the latter has, through the direction of the grantee again executed a deed to another." (*Rittenhouse v. Clark,* 110 Ky. 147, 61 S. W. 33.)

The preponderance of authority is to the effect that the surrender or destruction of a deed by agreement of the parties will not operate to revest the grantor with the title. Where a grantor has executed a second deed for the same land through a misunderstanding, whereby he has become liable on the covenant of warranty in the second deed to a third party, who had knowledge of the execution and delivery of the first deed, equity will relieve him by canceling the second deed. (*Strawn v. Norris,* 21 Ark. 80.)

In the case at bar, Urich had full knowledge that a deed had been made for these lots by McPherson to Beatty, and

he was a party to the destruction of the deed made by McPherson to Beatty. Hence, he dealt with his eyes open as to the real condition of the title to the property and of the existence of the indebtedness incurred by Beatty for improvements placed upon the property during Beatty's possession. Urich knew that Beatty owed the lienholders at the time the deed was destroyed, and he believed, in common with McPherson and Beatty, that the time for filing the liens had expired and that the lienholders could not satisfy their obligation out of the property, and that unless Beatty could personally respond for the amount of the indebtedness, the lienholders would be defeated. It is clear to my mind that McPherson never undertook to be responsible for the indebtedness incurred during the possession of Beatty, and that Urich understood, at the time the deed was destroyed and a new deed executed and delivered by McPherson, that McPherson was not to be held for an indebtedness incurred, or encumbrance done, made or suffered, during the possession of Beatty. It was no accommodation to McPherson to have the deed destroyed, but it was an accommodation to Beatty and Urich to avoid the expense of recording the deed from McPherson to Beatty and the making and recording of a deed from Beatty to Urich.

There are some cases which hold that the deed must be surrendered for the very purpose of revesting title, and where it is redelivered for any other purpose, such surrender will neither divest the grantee of the title, nor operate as an estoppel against him. (*Bunz v. Cornelius,* 19 Neb. 107, 26 N. W. 621; *Dycus v. Hart,* 2 Tex. Civ. 354, 21 S. W. 299.) In the case at bar, the real purpose for the surrender of the deed from Beatty to McPherson was to save expense.

In cases which are found in the books, where the surrender and cancelation of deeds conveying lands have been held, as between the parties, to revest the estate in the grantor, the deeds have not only been unrecorded, but were surrendered soon after their execution and delivery, and the parties were in fact restored to the same identical position, or to what was equivalent, that they stood in before the conveyance was made.

(*Patterson v. Yeaton,* 47 Me. 308.)   In the present case, if this latter rule be adopted, McPherson would not occupy the same position, or what was equivalent, that he stood in before the second conveyance was made.   He would be held liable for the indebtedness created by Beatty during his possession, for which liens attached subsequent to the making of the first deed and prior to the making of the second.

In *Weygant v. Bartlett,* 102 Cal. 224, 36 Pac. 417, the court said: ''Where a purchaser of property has the title made to another as a matter of convenience,—such other conveying it to him on the same day,—such other is not the purchaser's trustee, as to the land, though the latter conveyance is delivered back to him by the purchaser, and destroyed, with the purchaser's consent, since, on the delivery of the deed to the purchaser, the legal title passed, and the subsequent destruction thereof could not affect the title.''

The oral agreement entered into between McPherson, Beatty and Urich that, in order to avoid the expense incident to the recording of the deed from McPherson to Beatty and making and recording a deed from Beatty to Urich, the deed already executed and delivered by McPherson to Beatty be destroyed and McPherson make a deed direct to Urich would not, under the facts in this case, divest Beatty of the legal or equitable title to the lots in controversy.   McPherson, having conveyed the lots in question by deed to Beatty, could not make a valid conveyance of these lots from himself to Urich.   And Urich, who had full knowledge of this fact, accepted the deed from McPherson to himself, fully realizing that McPherson, not being possessed of the fee, did not covenant or warrant against liens created against lots of which he was not the owner. Under the laws of this state, real estate cannot be conveyed by oral agreement.   Beatty, having become vested with the title to said lots by a proper deed of conveyance, under the laws of this state, cannot divest himself of such title except by a proper deed of conveyance as prescribed by law.   The destruction of the evidence of title does not destroy the actual title.   In *Regan v. Howe,* 121 Mass. 424, the court said:

"The destruction or detention of the deed by the grantor, after such delivery, cannot divest the grantee's estate."

While, as between Beatty and Urich, the principle of estoppel might apply, as between Beatty's creditors and heirs, this principle, in my opinion, would not apply under any circumstances. In *Botsford v. Morehouse,* 4 Conn. 550, the grantee, finding himself unable to pay all the purchase money, returned the deed to the grantor for the purpose of revesting him with title and a creditor of the grantee levied upon the land; and it was held that the levy was effective, for the reason that the title still resided in the grantee. (See, also, *Raynor v. Wilson,* 6 Hill (N. Y.), 469; *Hinchliff v. Hinman,* 18 Wis. 130; *Cunningham v. Williams,* 42 Ark. 170; *Warren v. Tobey,* 32 Mich. 45.)

MORGAN, J., Dissenting.—I dissent from the conclusion reached by the majority of the court in this case and find myself entirely unable to follow the reasoning employed in reaching it.

Both the appellants and the respondent fully understood that the improvements which had been made for which the liens were subsequently filed had not been paid for at the time of the execution and delivery of the deed from McPherson and wife to Urich, and they all erroneously believed the time for filing such liens had expired. The record discloses nothing from which it may be inferred that any of the parties understood at the time the deed was made that any act of Beatty had created a lien or encumbrance upon the property. Upon the other hand, it clearly appears that the appellants thought they were giving and the respondent thought he was receiving a clear title. Laboring under this misunderstanding, the appellants made, executed and delivered to respondent a deed in which the following is recited: "That the parties of the first part . . . . do by these presents grant, bargain, sell, convey and confirm to the said party of the second part his heirs and assigns forever all the following described lots, pieces and parcels of land situated in the county of Idaho and state of Idaho, known and described as follows,

to wit: . . . . And that said parties of the first part and their heirs the said premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, shall and will forever warrant and defend.''

Sec. 3120, Rev. Codes is as follows:

''From the use of the word 'grant' in any conveyance by which an estate of inheritance, possessory right, or fee simple is to be passed, the following covenants, and none other, on the part of the grantor, for himself and his heirs, to the grantee, his heirs and assigns, are implied, unless restrained by express terms contained in such conveyance:

''1. That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate, or any right, title or interest therein, to any person other than the grantee;

''2. That such estate is at the time of the execution of such conveyance free from encumbrance done, made or suffered by the grantor, or any person claiming under him. Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance.''

The case of *Polak v. Mattson,* 22 Ida. 727, 128 Pac. 89, is cited in support of the position ''that implied covenants in a deed by the use of the word 'grant' do not include encumbrances done, made or suffered by the grantor unless he was under personal obligation to pay it.'' I am unable to construe that decision as establishing a general rule, applicable to all cases, to the effect above stated, for said case only decides that certain taxes which became a lien upon the property before the grantor acquired title to it were an encumbrance ''done, made or suffered'' by her or by any person claiming under her.

Whatever interest in the property Beatty had at the time the indebtedness was incurred, to secure the payment of which the liens were filed, was by virtue of the deed in escrow from appellants, and whatever claim he had was a claim under them.

It is believed the Chief Justice has quoted sufficiently from the case of *Young v. Stampfler,* 27 Wash. 350, 67 Pac. 721,

to distinguish it from this. No element of fraud enters into this case and the appellants did what they intended to do, i. e., gave the respondents a title which they warranted to be clear of encumbrance. Their present cause for complaint arises from their misunderstanding as to the validity of the claims of lien.

The Indiana cases and the case of *Watts v. Welman*, 2 N. H. 458, cited in the majority opinion, are to the effect that a covenant of warranty in a deed does not extend to a known encumbrance which the grantee agreed to discharge, particularly if the amount of the encumbrance has been deducted from the purchase price or consideration for which the transfer was made, and that parol evidence may be introduced to establish such facts and to show the real consideration. Probably no authority can be found which extends the rule further than above stated, and it is a departure from well-established principle to hold that the grantor in a warranty deed may escape the consequence of his covenant of warranty because neither himself nor the grantee knew of the existence of an encumbrance or other defect in the title at the time the deed was made.

It nowhere appears in the record that the amount of the claims for which the liens were filed was discussed between the parties or deducted from the purchase price or that respondent assumed or agreed to pay them. It does, however, appear that he insisted upon a warranty deed and an abstract showing a clear title. These the appellants gave him.

It is clear that the claims for which the liens were filed were encumbrances as defined in sec. 3121, Rev. Codes, and it is equally clear that they were "done, made or suffered" by Beatty at a time when he was claiming under the appellants, who were grantors in the deed to respondent, and since there is nothing expressed in the deed in any manner modifying or restraining the covenants of warranty implied by the use of the word "grant," it follows, as a matter of law, that the agreement of the parties was to the effect that the grantors, appellants here, would hold the grantee therein named, the

respondent in this case, harmless from such liens should they be filed and enforced.

I encounter equal difficulty in attempting to follow the reasoning employed by Justice Budge in his concurring opinion.

Assuming that at the time the appellants executed and delivered their deed to respondent the title was not in them, but was in Beatty (which I do not deem it necessary here to decide), the maker of a warranty deed is, by said opinion, placed in position to contend as follows: "I attempted to convey by warranty deed property which I had already conveyed away and the grantee, being aware of the facts, must have, as a matter of law, inferred that I had no title to convey and none to warrant." Such a defense is anticipated and prevented by subdivision 1 of sec. 3120, *supra.*

The rule of law applicable to this case is clearly stated in 11 Cyc. 1066 as follows: "The fact that either or both of the parties knew at the time of the conveyance that the grantor had no title in a part or in the whole of the land does not affect the right of recovery for a breach of covenant.

"Knowledge on the part of the purchaser of the existence of an encumbrance on the land will not prevent him from recovering damages on account of it, where he protects himself by proper covenants in his deed. . . . . Manifestly there is no breach where the grantee knowingly assumes the encumbrance."

I believe the judgment of the trial court should be affirmed.