# IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 50433

|  |  |  |
|---|---|---|
| MANUEL ROSE and MELISSA ROSE, Husband and Wife, | ) | |
| | ) | |
|   Third Party Plaintiffs-Appellants-Cross Respondents, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRED M. MARTINO and MICHELLE M. MARTINO, on behalf of themselves and as TRUSTEES of the F and M MARTINO FAMILY TRUST, | ) ) ) ) | |
| | ) | |
|   Third Party Defendants-Respondents-Cross Appellants. | ) ) | |
| _____ | ) | |
| DONALD R. MELIZA and MARYLEE V. MELIZA, Husband and Wife, | ) ) | |
| | ) | **Boise, August 2024 Term** |
|   Plaintiffs-Counterdefendants, | ) | |
| | ) | **Opinion Filed: January 17, 2025** |
| v. | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| MANUEL ROSE and MELISSA ROSE, Husband and Wife, | ) ) | |
| | ) | |
|   Defendants-Counterclaimants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WYNDHAM CAPITAL MORTGAGE, INC., a North Carolina corporation registered in Idaho; TRANSNATION TITLE & ESCROW, INC., dba FIDELITY NATIONAL TITLE COMPANY, a Delaware corporation registered in Idaho; NUMERICA CREDIT UNION, a Washington credit union registered in Idaho; and FIRST AMERICAN TITLE COMPANY, INC., an Idaho corporation, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
|   Defendants. | ) | |

1

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Barbara Buchanan, District Judge.

The orders of the district court are <u>reversed in part</u>, <u>affirmed in part</u>, and this case is <u>remanded</u>.

Post Falls Law, Post Falls, for Appellants/Cross-Respondents Rose. Jonathon Frantz argued.

Featherston Law Firm, Chtd., Sandpoint, for Respondents/Cross-Appellants Martino. Brent C. Featherston argued.

———————————

MEYER, Justice.

This appeal involves a claim for breach of warranty of title. Manuel Rose and Melissa Rose (the "Roses") purchased certain real property (the "Rose Property") from the F & M Martino Family Trust. Fred M. Martino and Michelle M. Martino (the "Martinos"), acting as trustees, transferred the property to the Roses by warranty deed. Several years before the transfer, the previous owners of the Roses' property recorded a Boundary Line Agreement ("BLA") with the then-owners of the parcel to the south. The BLA provided that the long-standing barbed wire fence was the boundary between the properties. The BLA was not referenced in the Roses' warranty deed. Several years later, the Roses' neighbors to the south, Donald R. Meliza and Marylee V. Meliza (the "Melizas"), decided to develop their property and wanted to subdivide it. The Melizas obtained a survey, which purported to show that the fence was in fact on the Roses' property. The Melizas brought an action for quiet title against the Roses for the strip of land between the fence and the surveyed boundary line (the "Disputed Property").

The Roses looked to the Martinos to defend them against the Melizas' quiet title action, and the Martinos refused to do so. The Roses filed a third-party action against the Martinos for breach of warranty of title and breach of the covenant of seisin. Both the Roses and the Martinos moved for summary judgment. The Martinos submitted the purchase and sale agreement, the title report, and other closing documents to show that the Roses knew of the BLA at the time the warranty deed was executed. They argued that the BLA was expressly excluded from the warranties under the warranty deed. The Roses argued that the title report, the purchase and sale agreement, and other closing documents were inadmissible parol evidence. They contended that because there was a difference in the amount of property described in their warranty deed and what

they actually received based on the BLA, the Martinos breached the covenant of seisin and also breached the warranty of title by failing to defend them against the Melizas' quiet title action.

The district court dismissed the Roses' claim for breach of warranty of title and breach of the covenant of seisin on summary judgment, finding that the BLA was expressly excluded from the warranty deed because it was a "matter of record." The Martinos sought an award of attorney fees under Idaho Code sections 12-120(3), 12-121, 12-123, and 6-202(2). They also sought an award of attorney fees under the attorney fee provision in the purchase and sale agreement. The district court declined to award attorney fees to the Martinos.

The Roses timely appealed the district court's summary judgment decision. The Martinos cross-appealed the district court's decision declining to award them attorney fees. For the reasons discussed below, the district court's decision granting the Martinos' motion for summary judgment is reversed, and the district court's decision declining to award attorney fees to the Martinos is affirmed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves a breach of warranty claim arising out of a quiet title action between neighbors. The Martinos sold the Rose Property to the Roses by warranty deed, which did not include the BLA in the "subject to" clause of the deed (hereafter, the "Subject to Clause") (discussed in more detail in Section I.A.). Approximately seven years after the sale, the Roses' neighbors to the south decided to develop their land. With a view to subdividing and making other improvements to their property, the Melizas obtained a survey that purported to show that a long-standing fence was, in fact, on the Roses' property. An image of the Rose Property and Disputed Property appears below and in Figure 1.





Figure 1

Based on the BLA, the Melizas filed an action against the Roses to quiet title in the Melizas to the Disputed Property. The Melizas filed their lawsuit after the Roses began to move or remove parts of the fence that separated their respective properties. The Melizas contended that the Roses violated the BLA by moving parts of the fence, and by chaining off access to the Melizas' newly constructed roadway that ran through part of the Disputed Property. The lawsuit commenced after the Melizas' attorney sent the Roses' attorney multiple cease-and-desist emails requesting that the Roses stop moving the fence and/or removing parts of the fence, which the Melizas' claimed the Roses ignored. Once the lawsuit was filed, the Roses looked to the Martinos to defend the Roses' ownership of the Disputed Property based on the warranty deed from the Martinos to the Roses. The Martinos, individually and as trustees of the F & M Martino Family Trust, declined to do so, and as a result, the Roses filed an action for breach of warranty against the Martinos and brought them into the underlying lawsuit as third-party defendants. The Martinos filed an answer raising the affirmative defenses of estoppel, release, the statute of frauds, statute of limitations, and waiver, among others, and they also claimed that the Roses had failed to state a claim for which relief could be granted under Idaho Rule of Civil Procedure 12(b)(6). All parties moved for summary judgment; however, only the district court's granting of summary judgment in favor of the Martinos with respect to the Roses' breach of warranty claim and the district court's decision to decline to award attorney fees to the Martinos are the subject of this appeal.

## A. The 1999 Boundary Line Agreement and Earlier Deeds

The Boundary Line Agreement was recorded on March 8, 1999, by the former owners of the Rose Property and the Meliza Property. The BLA described the location of the neighboring properties as follows:

The North Half of the Northwest Quarter of the Northeast Quarter of Section 8, Township 55 North, Range 5 West, Boise Meridain [sic], Bonner County, Idaho, owned by JERRY and JUTTA CALLANDER.

South Half of the Southwest Quarter of the Southeast Quarter of Section 5, Township 55, Range 5 West, Boise Meridian, Bonner County, Idaho, owned by THOMAS WALTON.

The BLA provided that the then-owners agreed that a long-standing fence now marked the boundary line between the two properties:

[T]he exact location of the existing common boundary line between the two properties is marked by an established, existing fence which has been standing for at least twenty five [sic] years, and the parties wish, for their mutual convenience, to establish a new boundary line which coincides with the existing fence.

The BLA included a term that "[t]his [a]greement shall be binding upon the assigns, sucessors [sic], encumbrancers, and transferees of each of the parties hereon and the [a]greement shall otherwise run with the land." It also included a provision that "[n]either party shall attempt to move either personally or through any third parties, the existing location of said common fence[.]"

When Walton conveyed what is now the Rose Property by warranty deed, the deed provided that it was subject to the BLA:

The South half of the Southwest quarter of the Southeast quarter of Section 5, Township 55 North, Range 5 West, Boise Meridian, Bonner County, Idaho;

LESS the County Road.

SUBJECT TO a Boundary Line Agreement between Jerry Callander and Jutta Callander, husband and wife, and Thomas Walton, recorded March 18, 1999, as Instrument No. 541052, records of Bonner County, Idaho.

However, later transfers of the Rose Property, including the 2013 warranty deed to the Martinos, omitted the BLA from the "subject to" clause:

[T]he grantor, do(es) hereby grant, bargain, sell and convey unto Fred Martino and Michelle Martino, Husband and Wife whose current address is [address omitted,] the grantees, the following described premises, in Bonner County, Idaho, TO WIT:

The South Half of the Southwest Quarter of the Southeast Quarter of Section 5, Township 55, North, Range 5 West, Boise Meridian, Bonner County, Idaho;

LESS the County Road.

In 2013, the Martinos executed a quitclaim deed to transfer the Rose Property to the F & M Martino Family Trust.

## B. The Roses' Warranty Deed

On April 18, 2014, the Martinos, as trustees of the F & M Martino Family Trust, transferred the Rose Property to the Roses by warranty deed. The warranty deed contained the following legal description and terms:

> The South half of the Southwest quarter of the Southeast quarter of Section 5, Township 55 North, Range 5 West, Boise Meridian, Bonner County, Idaho;
>
> LESS the County Road.
>
> SUBJECT TO all easements, right of ways, covenants, restrictions, reservations, applicable building and zoning ordinances and use regulations and restrictions of record, and payment of accruing present year taxes and assessments as agreed to by the parties above.
>
> TO HAVE AND TO HOLD the said premises, with its appurtenances, unto the said Grantee, and to the Grantee's heirs and assigns forever. And the said Grantor does hereby covenant to and with the said Grantee [the Roses], that *the Grantor is the owner in fee simple of said premises*; that said premises are free from all encumbrances except current years taxes, levies, and assessments, and except U.S. Patent reservations, restrictions, easements of record and easements visible on the premises, and that *Grantor will warrant and defend the same from all claims whatsoever.*

(Emphasis added).

## C. The Title Report and Purchase and Sale Agreement and Other Closing Documents

The closing escrow instructions provided to the Roses included a provision that the title to the Rose Property was subject to the following:

> Subject to:
>
> 1. Paragraphs **BII 1-6 & 8-12** of Schedule 'B' of Owner's Commitment for Title Insurance Order No. **498729-C**, dated **March 18, 2014**, Revision No. **1**, a copy of which is attached hereto.
>
> 2. Additional documents creating exceptions that will be recorded at the time of closing . . . .

Schedule B of the Owner's Commitment for Title Insurance contained a section on exceptions from coverage. Point 9 in the exceptions listed the BLA. The closing instructions were initialed by the Roses as part of the sale.

## D. The District Court's Decision on Cross-Motions for Summary Judgment

The Roses moved for partial summary judgment against the Martinos. They sought partial summary judgment on their claim that the Martinos breached the warranty of title because "[t]he Martinos warranted that they were the 'owners in fee simple' of the Disputed Property." The Roses noted that "in the warranty deed, the Martinos warranted that they would defend the property

6

(including the Disputed Property) from 'all claims whatsoever,'" but subsequently failed to defend the Roses against the Melizas' quiet title action. The Roses also maintained that "to the extent that the Melizas are victorious in their claims to quiet title or for a declaratory judgment, the Martinos will be in breach of their warranty to the Roses (the 'covenant of seisin')." The Roses maintained that their breach of warranty claim was ripe for determination because the Martinos were obligated to defend the Roses under the warranty deed and failed to do so. The Roses also requested that the district court take judicial notice of the fact that a section of land contains 640 acres to determine the amount of property conveyed by the warranty deed. The Roses challenged the admission of the Martinos' supporting declarations, arguing that the declarations constituted parol evidence and were inadmissible.

The Martinos moved to strike portions of Manuel Rose's declaration and argued that the Roses' claim for breach of warranty was "not ripe for determination until the [c]ourt rules on the Meliza-Rose dispute," and, alternatively, that the warranty deed expressly excluded "matters of record" and things "visible on the premises." The Martinos claimed there was no warranty of title as to the BLA, and as a result, the Roses could not establish a breach of warranty claim. The Martinos contended that their supporting declarations were being submitted to show the Roses' knowledge of the BLA at the time the warranty deed was executed, and to support their argument that the BLA was not included in the warranty deed.

The district court denied the Roses' motion for partial summary judgment on the breach of warranty claim, determining that the BLA was a "matter of record" and was excluded from the warranties in the warranty deed. It considered the challenged declarations over the Roses' objections. The district court declined to award attorney fees to the Martinos under Idaho Code section 12-120(3) because it determined that the lawsuit did not concern a commercial transaction. It noted that there was "no reference to a commercial transaction in the Third-Party Complaint and . . . the gravamen of this action was not a commercial transaction." The district court declined to award attorney fees based on the purchase and sale agreement because the Roses' claim was for breach of warranty based on the language of the deed—it was not a claim arising out of the purchase and sale agreement.

The district court dismissed the Martinos from the case on August 22, 2022. A final judgment was entered that resolved the remaining claims on November 30, 2022. The BLA was

7

dissolved, and title was quieted in the Melizas as part of a stipulated agreement that was included in the final judgment.

The Roses timely appealed, and the Martinos timely cross-appealed.

### E. The Parties' Arguments on Appeal

On appeal, the Roses argue that the district court erred when it considered the declarations of Brent Featherston and Fred Martino because the language of the warranty deed was clear and unambiguous, and the declarations constituted inadmissible parol evidence. They also argue that the district court erred when it dismissed their claim for breach of warranty. The Roses maintain that the warranty deed contained an erroneous legal description because it did not state that it was subject to the BLA. They contend that the Martinos breached the covenant of seisin (one of the warranties included in a warranty deed) by purporting to convey a property in fee simple when they did not own all the property in the legal description of the warranty deed. The Roses also contend that the Martinos breached the warranty by failing to defend them in the Melizas' quiet title action. They seek attorney fees on appeal under Idaho Code section 12-121 on the basis that the warranty deed is "clear and unambiguous that it attempted to grant the Roses the Disputed Property, but failed to do so . . . ." The Roses maintain that the Martinos' arguments are unreasonable based on "the fact that Idaho has held for decades that a 'deficiency in the quantity of land described in the deed constitutes a breach of [the covenants of title].'" (Alteration in original).

On appeal, the Martinos contend that the district court did not err when it considered the title report, purchase and sale agreement, and other closing documents attached to the declarations of Brent Featherston and Fred Martino because "circumstances and evidence of intention is admissible to determine what warranties of title were or were not included in a conveyance." The Martinos contend that the Roses had notice of the BLA through the title report, the purchase and sale agreement, and their observation of the long-standing fence when they visited the Rose Property. They argue that the district court was correct to rely on *Urich v. McPherson*, 27 Idaho 319, 149 P. 295 (1915), to consider the challenged declarations, which included the title report, purchase and sale agreement, and other closing documents, to show the Roses' knowledge regarding the BLA and the warranties under the warranty deed.

The Martinos argue that the Subject to Clause in the warranty deed limits the warranty of title and that it includes the BLA as a "matter of record." They argue that the warranty deed

8

"expressly limit[s] the Martinos' warranty of title to that which is NOT of record or visible on the premises." (Emphasis in original). They further claim that the cases relied upon by the Roses in support of their breach of warranty and breach of the covenant of seisin claims all concern unrecorded and unknown exceptions to the warranty of title and are inapplicable in this case. They compare the BLA at times to an easement or to an encumbrance on the Rose Property and argue that the BLA falls within the "inclusive" definition of an encumbrance under Idaho Code section 55-613.

The Martinos also cross-appealed the district court's decision declining to award them attorney fees based on the attorney fees provision in the purchase and sale agreement, or under Idaho Code sections 12-120(3), 12-121, 12-123, and 6-202(2). They argue that the district court erred because the case involved a commercial transaction, and that they were entitled to attorney fees under Idaho Code sections 12-120(3), 12-121, 12-123 or 6-202(2). The Martinos seek an award of attorney fees on appeal under Idaho Appellate Rule 41 based on the attorney fee provision in the purchase and sale agreement.

With respect to the Martinos' cross-appeal, the Roses argue that the district court did not err in declining to award attorney fees under Idaho Code section 12-120(3) because the lawsuit did not concern a commercial transaction, and the Martinos' other arguments related to attorney fees under the purchase and sale agreement are "subsumed within and by the warranty deed via the merger doctrine," pointing out that the warranty deed does not contain a provision for attorney fees.

## II. STANDARDS OF REVIEW

The admissibility of affidavits, declarations, or depositions filed in support of or in opposition to a motion for summary judgment is a threshold issue that must be decided before reaching the merits of a summary judgment motion. *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012). The decision to strike such declarations is reviewed for an abuse of discretion. *Id.* A trial court did not abuse its discretion if it: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

When this Court reviews a district court's decision on summary judgment, we apply the same standard used by the district court. *Papin v. Papin*, 166 Idaho 9, 18, 454 P. 3d 1092, 1101 (2019). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "When applying this standard, this Court construes disputed facts 'in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party.'" *Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 610, 349 P.3d 1197, 1201 (2015) (quoting *AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013)). To survive summary judgment, the non-moving party "may not rest upon the mere allegations or denials of that party's pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quoting I.R.C.P. 56(e) (2015)). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *AED, Inc.*, 155 Idaho at 163, 307 P.3d at 180 (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005)). "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *McFadden v. Sein*, 139 Idaho 921, 923, 88 P.3d 740, 742 (2004) (quoting *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)).

The district court's decision to award attorney fees is also reviewed for an abuse of discretion. *See H2O Env't, Inc. v. Farm Supply Distrib., Inc.*, 164 Idaho 295, 297–98, 429 P.3d 183, 185–86 (2018).

### III.   ISSUES ON APPEAL

1. Did the district court err when it admitted the declarations of Fred Martino and Brent Featherston?

2. Did the district court err when it dismissed the Roses' breach of warranty claim on summary judgment?

3. Did the district court err in denying the Martinos' motion for attorney fees?

4. Is either party entitled to attorney fees on appeal?

## IV.    ANALYSIS

**A. The district court erred in denying the Roses' motion to strike the declarations of Fred Martino and Brent Featherston.**

The district court considered the declarations of Fred Martino and Brent Featherston along with the attached documents, noting that "Idaho law provides that parol evidence is admissible, not to contradict or alter a deed, but to show the facts existing at the time the deed was executed." The district court relied on *Urich v. McPherson*, 27 Idaho 319, 149 P. 295 (1915), when it determined that the Martinos' title report and title insurance policy could be considered. In *Urich*, this Court explained that

> [t]he doctrine is well established that parol evidence is admissible to show the true facts existing at the time of a conveyance and that the land taken was conveyed subject to encumbrances of which the purchaser had full knowledge, and to show that while the warranty deed was given, the maker of the deed should not be held on a warranty when it was understood and agreed between the parties that he was not to be so held.

*Id.* at 323, 149 P. at 296. The district court then denied the Roses' motion to strike.

On appeal, the Roses contend that the district court erred when it denied their motion to strike because the language in the warranty deed is clear and unambiguous. They argue that the title report, the purchase and sale agreement, and other closing documents constitute parol evidence and that those documents should not have been considered by the district court in the face of an unambiguous warranty deed. The Roses also argue that the district court "relied entirely" on the challenged declarations "for the proposition that the Roses were aware of the BLA and therefore they are not entitled to rely on warranties provided by the Martinos" in the warranty deed. The Martinos counter that the district court properly considered the title report and other closing documents because "these matters were of record and visible," and "the consideration of the title report and closing documents also demonstrate[s] that the Appellants Rose were on constructive notice of these recorded instruments."

When the language in a deed is "plain and unambiguous" the parties' intent "must be determined from the deed itself, and parol evidence is not admissible to show intent." *Hall v. Hall*, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989) (footnote omitted) (citing *Gardner v. Fliegel*, 92 Idaho 767, 450 P.2d 990 (1969)). Under the merger doctrine, "[t]he acceptance of a deed to premises generally is considered as a merger of the agreements of an antecedent contract into the terms of the deed." *Fuller v. Callister*, 150 Idaho 848, 853, 252 P.3d 1266, 1271 (2011) (quoting

11

*Jolley v. Idaho Sec., Inc.*, 90 Idaho 373, 382, 414 P.2d 879, 884 (1966)). In other words, "any claim for relief must be based on the covenants or agreements contained in the deed, not the covenants or agreements as contained in the prior agreement." *Id.* (quoting *Jolley*, 90 Idaho at 382, 414 P.2d at 884.).

The district court relied on *Urich* to support its decision to consider extrinsic evidence outside of the language of the warranty deed. The district court erred in relying on *Urich* because that case is unique, fact-specific, factually distinguishable, and raises equitable issues not present in this case. Significantly, *Urich* has not been cited since 1915, until it was relied on by the district court in this case.

The breach of warranty claim at issue in *Urich* presents a situation that is akin to the creation of a resulting trust because the seller and person who received the purchase price from the buyer was not listed on the warranty deed; the warranty deed was from the original owner (and defendant) to the buyer (the plaintiff). *Id.* at 321–22, 149 P. at 296. The breach of warranty claim stemmed from the seller's improvements to the property, including the construction of various buildings, that later resulted in mechanics' or laborers' liens being filed against the property. *Id.* The original owner was not involved in the construction projects and had advised the buyer that liens may be on the property based on the seller's actions. *Id.* at 321, 149 P. at 295–96. At the time the buyer purchased the property from the seller, the seller's purchase of the property from the original owner was still in escrow. *Id.* at 321–22, 149 P. at 296. The deed from the original owner to the seller was destroyed, and a warranty deed from the original owner to the buyer was created. *Id.* This Court determined that the buyer "acquiesced" in the destruction of the interim deed. *Id.* We determined that the buyer could not pursue a breach of warranty claim when "it was understood and agreed between the parties that [the original owner] was not to be so held." *Id.* at 323, 149 P. at 296.

The *Urich* court considered extrinsic evidence of the circumstances surrounding the transaction relying on equitable principles that are, in the modern era, associated with claims for resulting trusts or other claims sounding in equity. *Id.* at 325, 149 P. at 297. The *Urich* court referenced equitable estoppel and analogized to a case where extrinsic evidence had been admitted to show that a warranty deed given to a party was done so "on an understanding that [it] was merely a redemption deed, and that it should have no effect as a warranty." *Id.* at 324–25, 149 P. at 297. The *Urich* court emphasized that the buyer dealt with the seller, paid the purchase price to the

seller, and that it was the seller, not the original owner, who had caused the liens to be filed against the property. *Id.* at 325, 149 P. at 297. This Court held that "it is evident under the facts of this case that [the original owner] never intended to warrant against the liens referred to, and it is equally clear that the plaintiff knew that he did not intend to do so[.]" *Id.* at 324, 149 P. at 297. The *Urich* court explained that "it would be most unjust and inequitable, under the facts of this case, to require [the original owner] to pay the amount of said liens when he never intended to warrant against them, and the purchaser well knew that he did not intend to do so." *Id.* at 325, 149 P. at 297.

In this case, the breach of warranty claim arises from a boundary line dispute between neighbors. We are not dealing with the same type of equitable claims at issue in *Urich*. It is our view that the holding in *Urich* is best limited to the unique facts of that case. Again, we note that other than this case, *Urich* has not been cited as precedent by any other court since its issuance in 1915. Further, under the more modern line of cases, the plaintiff's knowledge of the improvements and the possible liens against the property that were repeatedly emphasized by the *Urich* court are no longer relevant to whether the seller breached the warranties contained in a warranty deed. *See Nielson v. Talbot*, 163 Idaho 480, 486–88, 415 P.3d 348, 354–56 (2018) (holding that the district court erred in dismissing the breach of warranty claim although "at the time the Nielsons purchased the property, the lilac bushes, carport, and shed existed and demonstrated the property line").

We agree with the Roses that the language in the warranty deed is clear and unambiguous, and that the merger doctrine applies to exclude extrinsic evidence in this case. The district court erred when it considered the challenged declarations and attached documents—which included, among other things, the closing escrow instructions, the title insurance policy, the purchase and sale agreement, and the title report—because extrinsic evidence is inadmissible to vary the terms of an unambiguous deed. Although the declarations were ostensibly considered to show knowledge of the BLA, in effect they were used to alter the terms of the warranty deed. If the district court considered the declarations to show the Roses' knowledge of the BLA, that was in error because the documents are irrelevant to the issue of whether the Martinos breached any warranties.

**B. The district court erred when it dismissed the Roses' breach of warranty claim.**

A warranty deed "expressly guarantees the grantor's good, clear title and . . . contains covenants concerning the quality of title, including warranties of seisin, quiet enjoyment, right to convey, freedom from encumbrances, and defense of title against all claims." *McGimpsey v. D &*

13

*L Ventures, Inc.*, 165 Idaho 205, 214, 443 P.3d 219, 228 (2019) (quoting *Warranty deed*, Black's Law Dictionary (8th ed. 2004)). The covenant of seisin refers to the grantor's assurance to the grantee that he is "'lawfully seized' of the property being transferred." *Koelker v. Turnbull*, 127 Idaho 262, 265, 899 P.2d 972, 975 (1995) (citing *Simpson v. Johnson*, 100 Idaho 357, 361, 597 P.2d 600, 604 (1979)). The covenant of seisin is one of several covenants generally included in a warranty deed, along with the covenant of quiet enjoyment, and the covenant of good right to convey, among others. To establish a breach of the warranty, specifically the breach of the covenant of seisin, the party must show that "there are 'hostile titles, superior in fact to those of the *grantor*.'" *Id.* (emphasis in original) (quoting *Roper v. Elkhorn at Sun Valley*, 100 Idaho 790, 794, 605 P.2d 6968, 973 (1980)). In other words, a crucial inquiry is whether the grantor was "lawfully seized" of all the property at the time of the execution of the warranty deed, or if there was another person or entity with a valid interest in the property.

The Roses argue on appeal that the Martinos breached the covenant of seisin because the warranty deed purported to convey certain property that the Martinos did not have ownership of—they were not "legally seized" of all the property—based on the BLA. In other words, the Roses contend that the legal description in the warranty deed was incorrect because "the Martinos did not include any such language [related to the BLA in the Subject to Clause] in their warranty deed to the Roses," and "[i]nstead the Martinos warranted that they owned all the Property, *including the Disputed Property.*" (Emphasis in original). The Roses also contend that the Martinos breached the warranty of title by failing to defend them against the Melizas' quiet title action, after warranting that they would defend against "all claims whatsoever" in the deed.

We have held that a buyer may have a claim for breach of the covenant of seisin when a seller "covenanted that they are the owners in fee simple of said premises" and the seller did not have title to all the property described in the deed. *Simpson*, 100 Idaho 357, 597 P.2d 600. In *Simpson*, "there was an error in the legal description contained in the deed" and the street frontage represented in the deed was substantially less than the actual frontage amount. *Id.* at 361, 597 P.2d at 604. The buyers did not become aware of the discrepancy in the deed until after they purchased the property, and they filed suit against the sellers for failure of title, false representation, and breach of warranty. *Id.* at 359–60, 597 P.2d at 602–03. Although we affirmed the trial court's decision that the buyers were entitled to relief under the equitable theory of mutual mistake, we noted "the evidence also establishes a breach of the covenants of title" because the sellers

covenanted that they owned the property in fee simple when they did not own all the property described in the deed. *Id.* at 361–62, 597 P.2d at 604–05. We noted that "an action for damages is ordinarily the proper remedy for a breach of that covenant." *Id.* at 362, 597 P.2d at 605; *see also Flynn v. Allison*, 97 Idaho 618, 622, 549 P.2d 1065, 1069 (1976) ("Under Idaho law, damages for breach of the warranty contained in a deed, rather than specific performance of the deed covenants, has been established as adequate compensation for the property lost and expenses incurred in defending the title, including attorney fees[.]" (citations omitted)).

In *Nielson*, we held that the district court's dismissal of the Nielsons' claim for breach of warranty was in error as they "may be entitled to damages for their lost property and their attorney fees below because the warranty deed purported to convey them the property that was later quieted in favor of [another party]." 163 Idaho at 488, 415 P.3d at 356. We explained that the Nielsons may have a claim for breach of warranty because "through a warranty deed, [the sellers] provided an erroneous legal description of the land they were purporting to sell." *Id.* at 489, 415 P.3d at 357. "By this holding we reiterate it is imperative that sellers take adequate measures to ensure the accuracy of the legal description contained in a deed before they sell that property to another and make associated warranties." *Id.*

In this case, the district court granted the Martinos' motion for summary judgment which resulted in the dismissal of the Roses' breach of warranty of title claim because it determined that "[t]he Martinos had both constructive and actual notice of the BLA." It explained that "[t]he Martinos'[1] warranty deed provides that it is subject to encumbrances of record and excepts from its covenants matters of record." (Emphasis added). The district court concluded "as a matter of law that the BLA was excluded from the Martinos' warranty of title." It explained that "[t]he signed BLA was recorded," and "[w]hen the Roses purchased their parcel from the Martinos on April 18, 2014, the exceptions to the title report included any warranty for the BLA." It based its decision in part on *Kalange v. Rencher*, 136 Idaho 192, 195–96, 30 P.3d 970, 974–75 (2001). The district court determined that the BLA was a "matter of record," relying on the presumption in Idaho that "a purchaser is charged with every fact shown by the records and is presumed to know every other fact which an examination suggested by the records would have disclosed" including

---

[1] It is unclear whether the district court's discussion of the *Martinos*' warranty deed in its opinion was a typographical error, and the court meant the *Roses*' warranty deed, or if the court determined that the Roses' warranty deed was still subject to the BLA as a matter of record based on the Martinos' earlier deed.

"notice of every matter . . . which appears on the face of any recorded deed forming an essential link in his chain of title." *Id.* at 195–96, 30 P.3d at 974–75 (citations omitted).

We hold that the district court erred when it dismissed the Roses' claim for breach of warranty, which includes the breach of the covenant of seisin, based on its determination that the Roses had constructive and actual notice of the BLA. Although the district court placed great stock in the fact that the BLA was recorded and was a "matter of record," we note that the plain language of the warranty deed does not exclude "matters of record" from the provided warranties. The warranty deed plainly states that the following property is conveyed from the Martinos to the Roses:

> The South half of the Southwest quarter of the Southeast quarter of Section 5, Township 55 North, Range 5 West, Boise Meridian, Bonner County, Idaho;
>
> LESS the County Road.
>
> SUBJECT TO all easements, right of ways, covenants, restrictions, reservations, applicable building and zoning ordinances and use regulations and restrictions of record, and payment of accruing present year taxes and assessments as agreed to by the parties above.
>
> . . . And the said Grantor does hereby covenant to and with the said Grantee, that the Grantor is the owner in fee simple of said premises; that said premises are free from all encumbrances except current years taxes, levies, and assessments, and except U.S. Patent reservations, restrictions, easements of record and easements visible upon the premises, and that Grantor will warrant and defend the same from all claims whatsoever.

The deed contains a Subject to Clause with specific items included. "The words 'subject to' in a deed conveying an interest in real property are words of qualification of the estate granted." 7A Am. Jur. 2d *Legal Forms* § 87:201 (2024 update); *see* Am. Jur. 2d *Deeds* § 247 (2024 update). The deed on its face does not include the BLA in the Subject to Clause, nor does it otherwise reference the BLA, and it does not expressly exclude the BLA from its warranty of title. We agree with the Roses that the language of the warranty deed is clear and unambiguous. It clearly states that the Martinos are the owners "in fee simple of said premises," and covenants that they "will warrant and defend the same from all claims whatsoever."

We note that the BLA does not fit neatly into the items listed under the Subject to Clause of the warranty deed because it is an agreement to change the boundary line between the properties to the long-standing fence, and it suggests an *ownership* interest on the part of the Melizas of the Disputed Property. The relevant part of the BLA states that:

16

2. The exact location of the existing common boundary line between the two properties is marked by an established, existing fence which has been standing for at least twenty five [sic] years and the parties wish, for their mutual convenience, to establish a new boundary line which coincides with the existing fence.

For the reasons set forth above, and in consideration of the mutual covenants and promises of the parties hereto, it is agreed as follows:

1. The new boundary line between the property owned by [previous owners] shall be located along the existing barbed wire fence between the two described properties:

. . . .

4. This Agreement shall be binding upon the assigns, sucessors [sic], encumbrancers, and transferees of each of the parties hereon and the Agreement shall otherwise run with the land.

The BLA is not an easement, because it is not "[a]n interest in land owned by another person, consisting of the right to use or control the land, or the area above or below it, for a specific limited purpose (such as to cross it for an access road)." *Easement*, Black's Law Dictionary (10th ed. 2014). It is not a right of way, because it does not establish "the right to pass through property owned by another." *Right-of-way*, Black's Law Dictionary (10th ed. 2014). It is not a restriction, which is "[a] limitation ([especially] in a deed) placed on the use or enjoyment of property." *Restriction,* Black's Law Dictionary (10th ed. 2014). It is not a reservation, because it is not "1. A keeping back or withholding. 2. That is which kept back or withheld. 3. The creation of a new right or interest (such as an easement), by and for the grantor, in real property being granted to another." *Reservation*, Black's Law Dictionary (10th ed. 2014). The BLA is clearly not an "applicable building and zoning ordinance." It is not an encumbrance because the BLA is not "a lien or mortgage" or "[a] claim or liability that is attached to property or some other right and that may lessen its value[.]" *Encumbrance*, Black's Law Dictionary (10th ed. 2014). Generally, an encumbrance is "any property right that is not *an ownership interest*." *Id.* (emphasis added). As we noted earlier, the BLA does suggest an *ownership* interest in the Disputed Property on the part of the Melizas, thus it would not be properly categorized as an encumbrance despite the Martinos' argument that the term encumbrance is "inclusive" and should be broadly construed. They also contended below that the BLA was an encumbrance "of record" and "visible on the property." The BLA is not a "tax[], assessment[]," or a "lien[]" on the Rose Property. I.C. § 55-613. Even though

17

the BLA was recorded, so it is "of record," that is not enough to place it within the Subject to Clause of the warranty deed.

The Roses contend that the BLA is not a covenant within the Subject to Clause. The Martinos do not contend that the BLA *is* a covenant. Although it contains covenants, the BLA, as discussed, is an agreement establishing a boundary line between parcels of property.

In addition to this issue concerning whether the BLA was intended by the parties to be a "covenant" in the Subject to Clause, the Roses are entitled to a trial on their claims. The Roses may be able to establish a claim for breach of warranty on two bases, one of which is the breach of the covenant of seisin because the BLA was not included in the Subject to Clause of the warranty deed. The warranty deed contained a covenant from the Martinos to the Roses that they owned the Rose Property "in fee simple." The Melizas later obtained quiet title to the Disputed Property based on the BLA, and the BLA was ultimately dissolved. However, the BLA was in place at the time the warranty deed was executed. At the time of the conveyance, the Martinos were not "lawfully seized" of the entirety of the property referenced in the warranty deed. Thus, the Roses may be able to establish a claim for the breach of the covenant of seisin.

The Roses may also have a claim for breach of warranty of title based on the Martinos' refusal to defend the Roses against the Melizas' quiet title action as title to the Disputed Property was subsequently quieted in the Melizas. In *Flynn v. Allison*, 97 Idaho 618, 622, 549 P.2d 1065, 1069 (1976), we held that the trial court erred in rejecting the buyers' claim for damages resulting from the seller's breach of warranty of title. We explained:

> Since [the seller] failed in her prayer for reformation of the deed [to correct a typographical error related to the property line], and title to the overlapping strip was quieted in [the other party], [the buyers] were entitled to relief on their counterclaim, as they have been deprived of some of the land which [the seller's] warranty deed purports to convey to them.

*Id*. We held that "damages for breach of the warranty contained in a deed, rather than specific performance of the deed covenants, has been established as adequate compensation for the property lost and expenses incurred in defending the title, including attorney fees." *Id.* (citations omitted).

On remand, the Roses are entitled to pursue their breach of warranty claim.

18

**C. The district court did not err in declining to award attorney fees to the Martinos.**

The Martinos contend that the district court erred by declining to award them attorney fees below under Idaho Code section 12-120(3) because they maintain that the Roses characterized their breach of warranty claims as involving a commercial transaction. The Martinos also argue on cross-appeal that the district court erred by declining to award them attorney fees under the terms of the purchase and sale agreement. The Roses counter that the district court's decision was correct because this case does not involve a commercial transaction and because the attorney fee provision in the purchase and sale agreement merged into the warranty deed. The Roses maintain that attorney fees are not available in this case because the warranty deed does not contain an attorney fee provision. We agree with the Roses.

"Where an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." *Hood v. Poorman*, 171 Idaho 176, 191, 519 P.3d 769, 784 (2022) (citation omitted). "In offering guidance, however, we are aware that such guidance should only be given on issues that are absolutely necessary, and regarding issues that have a practical effect on this appeal; otherwise, we would be offering an impermissible advisory opinion cloaked as 'guidance.'" *Id.* (emphasis and citation omitted). There are issues raised on cross-appeal related to requests for attorney fees that are likely to arise again with a new trial. We will address each issue in turn.

1. *The district court did not err when it denied the Martinos' request for attorney fees under Idaho Code section 12-120(3) because this case does not involve a commercial transaction.*

The district court determined at the attorney fee hearing that this is "a boundary line case" where "nobody had any commercial property, we didn't have a business involved." We agree with the district court that the matter at issue in this case does not involve a commercial transaction. The Roses purchased a residential home from the Martinos, and their complaint does not allege that their breach of warranty claim involves a commercial transaction. Even if the Roses did list Idaho Code section 12-120(3) as a basis for an award of attorney fees below, the district court did not err when it determined that the Roses "cited a whole bunch of statutes" to indicate "we are seeking fees on any basis we might be able to get them," and their reference to Idaho Code section 12-120(3) as a basis for an award of attorney fees was merely part of the Roses' approach to plead fees under every possible basis. Given that the matter at issue in this case involved the purchase and sale of a residential home and the Roses' breach of warranty claim did not relate to a

commercial transaction, the district court did not err it declining to award attorney fees under Idaho Code section 12-120(3).

      *2.   The district court did not err when it denied the Martinos' request for attorney fees based on the attorney fee provision in the purchase and sale agreement.*

Along the same lines, the Martinos' argument that the district court erred in declining to award attorney fees based on the attorney fee provision in the purchase and sale agreement is unavailing. The district court did not err when it determined, based on *Sells v. Robinson*, 141 Idaho 767, 775, 118 P.3d 99, 107 (2005), that the Roses' claim is based on a warranty deed and that the deed does not contain an attorney fee provision. In *Sells*, we declined to award attorney fees under a term in the purchase and sale agreement when the plaintiff's claims were based on the deed. *Id.* The *Sells* case involved claims for timber trespass, conversion, and damages after the defendant logged part of the plaintiffs' property without permission. *Id.* at 770, 118 P.3d at 102. On appeal, the plaintiffs sought attorney fees under Idaho Appellate Rule 41 and the purchase and sale agreement. *Id.* at 775, 118 P.3d at 107. We declined to award attorney fees on appeal because the claims at issue were not based on the purchase and sale agreement but were "based on the deed which has no attorney fee provision." *Id.* Similar to the plaintiffs in *Sells*, in this case the Roses' claim is not based on the purchase and sale agreement but is based on the warranty deed, which does not contain an attorney fee provision. Thus, it was not error for the district court to decline to award attorney fees under the terms of the purchase and sale agreement.

**D.  Neither party is entitled to an award of attorney fees on appeal.**

The Roses seek attorney fees on appeal under Idaho Code section 12-121 and Idaho Appellate Rule 41. Idaho Code section 12-121 allows this Court to award attorney fees on appeal to the prevailing party when "the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. The Roses argue the Martinos defended this appeal unreasonably based on Idaho caselaw related to the breach of the covenant of seisin. This case presented thorny issues, specifically a recorded boundary line agreement in the context of a third-party action for breach of warranty of title. We hold that the Martinos did not defend this appeal frivolously, unreasonably, or without foundation because they were defending the district court's grant of summary judgment in their favor.

The Martinos also seek attorney fees on appeal under Idaho Code sections 12-120(3), 12-121, 12-123, and 6-202(2), the purchase and sale agreement, and Idaho Appellate Rule 41. As discussed above, the Martinos are not entitled to an award of attorney fees under Idaho Code

section 12-120(3) because this case does not involve a commercial transaction, and they are not entitled to an award of attorney fees based on the terms of the purchase and sale agreement because this case concerned claims based on a breach of the warranty deed that did not contain an attorney fee provision.

Idaho Code section 6-202(2) does not provide for an award of attorney fees. I.C. § 6-202(2). Idaho Code section 12-123 "does not apply on appeal." *Horton v. Horton*, 171 Idaho 60, 78, 518 P.3d 359, 377 (2022) (quoting *Papin v. Papin*, 166 Idaho 9, 43, 454 P.3d 1092, 1126 (2019)); I.C. § 12-123. With respect to the Martinos' other claimed bases for an award of attorney fees on appeal, Idaho Code sections 12-120(3), 12-121, and 6-202(3) all contemplate an award of attorney fees to the prevailing party. I.C. §§ 12-120(3), 12-121, and 6-202(3)(a)–(c). As a result, the Martinos are not entitled to an award of attorney fees on appeal under these statutes because they are not the prevailing party on appeal.

As the prevailing parties, the Roses are entitled to costs on appeal. I.A.R. 40(a).

## V.  CONCLUSION

For the forgoing reasons, the district court's order granting the Martinos' motion for summary judgment is reversed. The district court's decision declining to award attorney fees to the Martinos is affirmed. The Roses are awarded costs on appeal. This case is remanded for further proceedings consistent with this order.

Chief Justice BEVAN and Justices BRODY, MOELLER, and ZAHN CONCUR.